## RAILROAD LABOR BOARD v. ROBERTSON.

### SAME v. McGUIRE

(District Court, N. D. Illinois, E. D. November 6, 1924. On the Merits, January 12, 1925.)

Nos. 4282, 4326.

i. **Courts ⚌256—Jurisdiction to compel attendance of witness before Labor Board not limited to court of district where witness resides.**

The provision of Transportation Act Feb. 28, 1920, § 310 (Comp. St. Ann. Supp. 1923, § 10071¼hhh), that in case of failure of a witness to obey a subpœna of the Railroad Labor Board· the board may invoke the aid of "any United States District Court," is within the power of Congress, and the jurisdiction so conferred is not limited to the court of the district of which the witness is an inhabitant.

2. **Constitutional law ⚌74—Courts ⚌256—Court may exercise jurisdiction in aid of investigations by administrative bodies.**

The process of the courts may be exercised, pursuant to authority of Congress, in aid of investigations by administrative bodies.

3. **Courts ⚌257—Application by Labor Board to compel attendance of witness is judicial proceeding.**

An application, under authority of Congress by an administrative body, such as the Railroad Labor Board, to a court to compel the attendance and testimony of a witness before it in a substantial matter under investigation, is a proper judicial proceeding to enforce a

right, in which the judgment of the court is enforceable by its process, though the orders of the board may not be.

4. **Witnesses ⚌293½—Compelling employé to testify in controversy before Labor Board not violation of constitutional rights.**

Compelling a witness to appear and give testimony before the Railroad Labor Board, through the aid of the courts, is within the powers conferred on the Board by Transportation Act Feb. 28, 1920, § 310 (Comp. St. Ann. Supp. 1923, § 10071¼hhh), and is not in violation of any right of the witness protected by Const. Amend. 5, because he is an employé of one of the carriers, which is a party to the controversy and interested therein.

5. **Master and servant ⚌69—Whether action of Labor Board is arbitrary determined by character of act itself.**

Whether the action of an administrative body, as the Railroad Labor Board, is void as arbitrary must be determined from the action itself and not from the state of mind of one or more of its members.

Petitions of the Railroad Labor Board against D. B. Robertson and against J. M. McGuire. On motions to quash summons and to dismiss petitions. Denied.

Edwin A. Olson, U. S. Dist. Atty., of Chicago, Ill., and Weymouth Kirkland and Robert N. Golding, Sp. Asst. Attys. Gen., for Railroad Labor Board.

Donald R. Richberg, of Chicago, Ill. (David E. Lilienthal, of Chicago, Ill., of counsel), for respondents.

WILKERSON, District Judge. These are petitions under Section 310 of the Transportation Act of 1920 (41 Stat. 472 [Comp. St. Ann. Supp. 1923, § 10071¼hhh]) to require the attendance of the respondents as witnesses before the Railroad Labor Board. In case No. 4282 the respondent is a citizen and inhabitant of Cleveland, in the Northern district of Ohio. In case No. 4326 the respondent is a citizen and inhabitant of Chicago, in the Eastern division of the Northern district of Illinois. In other respects the averments of the petition are the same.

It is charged in substance that prior to May 14, 1924,·disputes existed between certain railroad interstate carriers named in the petitions and locomotive engineers, firemen, and enginemen, who were employees of such carriers; that the employees were represented in such disputes by the Brotherhoods of Locomotive Engineers and of Locomotive Firemen and Enginemen; that such disputes related to wages and salaries of said employees and rules and working

conditions; that none of said disputes had been decided in conference between representatives of the railroads and other employees, or submitted to any railroad board of labor adjustment provided for by section 302 of the Transportation Act (Comp St. Ann. Supp. 1923, § 10071¼f); that on May 14, 1924, the Railroad Labor Board assumed jurisdiction of said disputes and consolidated the same for hearing as docket No. 4055, Atchison, Topeka & Santa Fé Railway et al. v. Brotherhood of Locomotive Engineers and Brotherhood of Locomotive Firemen and Enginemen; that the order assuming jurisdiction by the board was as follows:

"The board is advised that on or about January 1, 1924, the Brotherhood of Locomotive Engineers and Brotherhood of Locomotive Firemen and Enginemen presented requests for increase in rates of pay to the carriers following: [Here being set forth the names of the carriers set forth in the petitions.] Concurrent therewith the above Western railroads presented requests to the representatives of the employees for relief from alleged restrictive and burdensome rules governing working conditions.

"Subsequent thereto conferences were arranged between the duly authorized representatives of the interested parties. These conferences continued until May 12, 1924, at which time the conferences terminated without agreement having been reached. In view of these circumstances, the board has reason to believe that a dispute exists which is likely to substantially interrupt commerce. The board therefore decides to exercise its authority as set forth in the Transportation Act of 1920, and hereby orders the parties directly involved to attend a hearing which is set for June 3, 1924, at 10 o'clock a. m., daylight saving time, Transportation Building, Chicago, unless in the meantime a settlement is reached. Pending hearing and decision thereon both parties are directed to maintain status quo."

The petitions further allege that the consolidated disputes were heard from time to time by the board and evidence taken, a copy of which proceedings is attached to the petition and contains more than 2,000 typewritten pages; that subpoenas were duly served upon 102 witnesses, who were all officers or agents of the brotherhoods or employees of one of the carriers, including the respondents, demanding their presence before the board for the purpose of giving evidence in said consolidated disputes; that

said witnesses, including respondents, appeared specially by attorney and refused to give evidence on divers grounds, one of which was that the petitioner had no jurisdiction to hear the disputes; that the board overruled the objection and made an order in part as follows:

"In this particular case, the board's opinion that a substantial interruption of traffic was likely to result from the controversy was based upon the amplest grounds, a portion of which will be briefly mentioned.

"(1) The questions in dispute affect the wages and working conditions of the engineers and firemen on 43 of the principal railroads of the West, Southwest, and Northwest, comprising an overwhelming per cent. of the mileage in that territory.

"(2) The negotiation of these questions was by mutual agreement taken up between the carriers represented by the Conference Committee of Managers, Western Railways, and the Brotherhood of Locomotive Engineers and the Brotherhood of Locomotive Firemen and Enginemen. After some weeks of unsuccessful efforts to reach an agreement, the conference was terminated without agreement and the representatives adjourned. Thereupon the manager's committee notified the board of the failure to settle the disputes by agreement.

"(3) Knowing that the same managers' committee had recently negotiated a settlement of analogous disputes concerning wages with the Order of Railway Conductors and the Brotherhood of Railroad Trainmen, the board had reason to believe that their negotiations with the Brotherhood of Locomotive Engineers and Brotherhood of Locomotive Firemen and Enginemen had been in good faith and with a genuine desire to adjust differences, and that there must necessarily exist matters of sharp dispute.

"(4) The board was aware that the Brotherhood of Locomotive Engineers and Brotherhood of Locomotive Firemen and Enginemen, when a similar dispute about wages and working conditions on the New York, New Haven & Hartford Railroad had resulted in disagreement, had recently taken a strike vote. Since then these two organizations have taken a strike vote on the Buffalo, Rochester & Pittsburg Railroad to force a settlement of a similar dispute affecting wages and rules. The board is therefore justified in the conclusion that it is the policy of these two organizations to promptly resort to a strike upon the failure to reach an agreement relative to these wage

and rules controversies. Moreover, the board was also mindful of the fact that these same two organizations ordered a strike a few months ago on the Virginian Railway on account of unsettled disputes, without first bringing said disputes to the board. After the strike in this instance was effective, the organizations did, however, appear before the board and present their contentions in connection with the matters in dispute. These occurrences are reasonably construed to signify the policy of these organizations in regard to the interruption of traffic by strikes.

"(5) The board is necessarily cognizant of the fact that said two organizations comprise a very great percentage of those two classes of employees essential to the operation of trains, and that their possession of large strike funds would increase their ability to make an interruption of traffic substantial within the meaning of the statute.

"(6) The organizations objected to the board's assumption of jurisdiction in this case on the ground that negotiations were being resumed with the managements of the individual railroads. The board therefore postponed the hearing to give ample opportunity for further negotiations of any character. The carriers, however, took the position that the managers' committee represented each individual road, and would negotiate with the local chairman of the organizations, if desired, and that they did not see fit to abandon the method of negotiation already adopted by agreement.

"(7) The board cannot overlook the fact that the carriers affected by this situation serve the West and Northwest, whose people are just now emerging from a severe agricultural depression, and who would suffer disastrous results from a railroad strike. Furthermore, it must be remembered that no injustice can be done either to the carriers or the employees by a public hearing of the facts surrounding these disputes before a tribunal composed of representatives of the carriers, the employees, and the public. Such a hearing will in all probability result in an adjustment of the controversy. At any rate, it will enlighten the public as to the issues involved, and this is one of the main purposes that was contemplated by Congress when the Transportation Act was passed. On the other hand, the finding of the board will not be legally obligatory upon either party.

"In view of all those considerations, the board cannot accept the suggestion that its action was premature, and that either a carrier or the employees have the right to split hairs with the board as to the exact minute when it should exercise its statutory discretion in the assumption of jurisdiction of a dispute in the interest of the public welfare and for the well-being of the parties themselves."

That afterwards other subpœnas were served upon respondents, returnable on September 11, 1924, at which time respondents, appearing specially by attorney, refused to attend and give evidence; that in pursuance of its duty it is incumbent upon the board, in order to perform its functions, to procure evidence from the respondents, and that such evidence is material to the matters involved in said dispute.

The petitions pray for orders in accordance with section 310 of the Transportation Act, requiring the respondents to comply with the subpœnas and give evidence touching the matters in question.

In case No. 4282, respondent appears specially and moves to quash the summons on the ground that, as he is an inhabitant of the Northern district of Ohio, this suit may not be maintained against him here.

In case No. 4326, respondent moves to dismiss the petition on the ground that the subpœna and these proceedings contravene the third article of the Constitution and the Fourth, Fifth, and Tenth Amendments. As to article 3 he asserts that this proceeding invokes the exercise of the judicial power in a proceeding not brought to enforce any legal rights or to provide redress or punish any legal wrongs, and is not a case or controversy within the meaning of the second section of article 3 of the Constitution, to which alone the judicial power of the courts of the United States extends.

The pertinent parts of section 310 of the Transportation Act are as follows:

"For the efficient administration of the functions vested in the Labor Board by this title, any member thereof may require, by subpœna issued and signed by himself, the attendance of any witness and the production of any book, paper, document, or other evidence from any place in the United States at any designated place of hearing, and the taking of a deposition before any designated person having power to administer oaths. In the case of a deposition the testimony shall be reduced to writing by the person taking the deposition or under his direction, and shall then be subscribed to by the deponent. Any member of the Labor

Board may administer oaths and examine any witness. Any witness summoned before the board and any witness whose deposition is taken shall be paid the same fees and mileage as are paid witnesses in the courts of the United States.

"In case of failure to comply with any subpœna or in case of the contumacy of any witness appearing before the Labor Board, the board may invoke the aid of any United States District Court. Such court may thereupon order the witness to comply with the requirements of such subpœna, or to give evidence touching the matter in question, as the case may be. Any failure to obey such order may be punished by such court as a contempt thereof."

[1] Considering first the motion to quash in No. 4282, the only question, in view of the special appearances, is that of the right of the Labor Board to maintain this proceeding against a defendant in a district other than the one of which he is an inhabitant.

Section 51 of the Judicial Code (Comp. St. § 1033) provides that, except as provided in the six succeeding sections (none of which affects the question now under consideration), and except where diversity of citizenship is the ground of jurisdiction, no civil suit shall be brought in any district against any person in any other district than that whereof he is an inhabitant. This general provision, of course, controls in the absence of specific legislation by Congress. Congress has the power, however, to vest a District Court with jurisdiction as broad as the territorial limits of the United States. It is said in United States v. Union Pacific R. R. Co., 98 U. S. 569, 603 (25 L. Ed. 143):

"With the exception of the Supreme Court, the authority of Congress, in creating courts and conferring on them all or much or little of the judicial power of the United States, is unlimited by the Constitution."

The court in the same case further said:

"The same article declares, in section 1, that this 'power shall be vested in one Supreme Court and in such inferior courts as the Congress may, from time to time, ordain.' The discretion, therefore, of Congress as to the number, the character, and the territorial limits of the courts among which it shall distribute this judicial power is unrestricted, except as to the Supreme Court. On that court the same article of the Constitution confers a very limited orig-

inal jurisdiction, namely, 'in all cases affecting ambassadors, other public ministers, and consuls, and cases in which a state shall be a party,' and an appellate jurisdiction in all other cases to which this judicial power extends, with such exceptions and under such regulations as the Congress shall make."

Congress, in a number of instances, has created exceptions to the general provision of section 51 of the Judicial Code, and conferred upon the District Courts jurisdiction over defendants who are not inhabitants of the district within which the suit is brought. Examples of this are the provisions of the Interstate Commerce Act (24 Stat. 383; 25 Stat. 858; 26 Stat. 743 [Comp. St. § 8576 et seq.]) and the Federal Trade Commission Act (38 Stat. 722 [Comp. St. § 8836i]), which authorize suits to require the attendance and testimony of witnesses from any place in the United States to be brought in the District Courts of the United States within the jurisdiction of which the inquiry is carried on; the provisions of the Sherman Act (26 Stat. 209 [Comp. St. § 8827]) and the Clayton Act (38 Stat. 736 [Comp. St. § 8835k]), authorizing the court to cause defendants to be summoned whether they reside in the district in which the court is held or not; and the Copyright Act (35 Stat. 1084 [Comp. St. § 9556]), conferring jurisdiction to grant injunctions against parties anywhere in the United States, and making such injunctions operative throughout the United States.

Respondent in case No. 4282 presents by his motion the question of the construction of section 310 of the Transportation Act. That the natural and usual significance of plain terms is to be adopted as the legislative meaning, in the absence of a clear showing that something else was meant, is an elementary rule of statutory construction. United States v. First National Bank, 234 U. S. 245, 258, 34 S. Ct. 846, 58 L. Ed. 1298.

In Dewey v. United States, 178 U. S. 510, 521, 20 S. Ct. 981, 985 (44 L. Ed. 1170), it was said:

"This court has nothing to do with questions of mere policy that may be supposed to underlie the action of Congress. What is termed the policy of the government in reference to any particular subject of legislation, this court has said, 'is generally a very uncertain thing, upon which all sorts of opinions, each variant from the other, may be formed by different persons. It is

a ground much too unstable upon which to rest the judgment of the court in the interpretation of statutes.' Hadden v. Collector, 5 Wall. 107, 111. Our province is to declare what the law is, and not, under the guise of interpretation or under the influence of what may be surmised to be the policy of the government, so to depart from sound rules of construction as in effect to adjudge that to be law which Congress has not enacted as such. Here the language used by Congress is unambiguous. It is so clear that the mind at once recognizes the intent of Congress. Interpreted according to the natural import of the words used, the statute involves no absurdity or contradiction, and there is consequently no room for construction. Our duty is to give effect to the will of Congress, as thus plainly expressed. United States v. Fisher, 2 Cranch, 358, 399; Lake County v. Rollins, 130 U. S. 662, 670."

The statement of the Supreme Court in Lake County v. Rollins, supra, 130 U. S. 662, 669, 9 S. Ct. 651, 652 (32 L. Ed. 1060), is applicable here:

"The language of [this] section seems to be neither complicated nor doubtful, and we think it plain that what is meant is exactly what is said; no more and no less."

The terms of the statute invoked by the petitioner are clear and unambiguous. The statute provides that, in case of failure to comply with any subpœna, the board may invoke the aid of any United States District Court and that such court may thereupon order the witness to comply with the requirements of such subpœna, and that any failure to obey such order may be punished by such court as a contempt thereof. This court, in my opinion, has jurisdiction of the case, although respondent is not an inhabitant of this district.

The argument in support of the motion to dismiss in case No. 4326 centers around the contention that the case is not one within the meaning of article 3 of the Constitution, and that therefore the judicial power is not capable of acting upon the question presented. If the contention of respondent is correct, there are few, if any, proceedings before the Labor Board in which the attendance and testimony of witnesses may be compelled, and the section is practically nugatory, if not absolutely void.

It is well established that, where a court is authorized to enter so-called judgments, which it has no power to enforce, or which are merely advisory to Congress or to some administrative department of the government, such judgments cannot be deemed an exercise of judicial power. La Abra Silver Mining Co. v. United States, 175 U. S. 423, 20 S. Ct. 168, 44 L. Ed. 223; In re Sanborn, 148 U. S. 222, 226, 13 S. Ct. 577, 37 L. Ed. 429; Gordon v. United States, 2 Wall. 561, 17 L. Ed. 921; Id., 117 U. S. 697, append. Congress has made no provision for the enforcement of the decisions of the Labor Board through the courts.

The Supreme Court in Pennsylvania R. Co. v. Labor Board, 261 U. S. 72, 79, 43 S. Ct. 278, 67 L. Ed. 536, said:

"The only sanction of its decision is to be the force of public opinion, invoked by the fairness of a full hearing, the intrinsic justice of the conclusion, strengthened by the official prestige of the board, and the full publication of the violation of such decision by any party to the proceeding. The evident thought of Congress in these provisions is that the economic interest of every member of the public in the undisturbed flow of interstate commerce, and the acute inconvenience to which all must be subjected by an interruption caused by a serious and widespread labor dispute, fastens public attention closely on all the circumstances of the controversy, and arouses public criticism of the side thought to be at fault. The function of the Labor Board is to direct that public criticism against the party who, it thinks, justly deserves it."

In view of the advisory character of the decisions of the Labor Board, it is contended that the proceeding here to compel the attendance of witnesses is ancillary to a proceeding before the board in which the order to be entered is not enforceable through the courts, and that therefore this proceeding is not a contention between litigants, brought before a court by a regular proceeding for the protection or enforcement of rights or the prevention, redress, or punishment of wrongs. Reliance is placed by respondent upon Harriman v. Interstate Commerce Commission, 211 U. S. 407, 29 S. Ct. 115, 53 L. Ed. 253; Interstate Commerce Commission v. Brimson, 154 U. S. 447, 14 S. Ct. 1125, 38 L. Ed. 1047; In re Pacific Railway Commission (C. C.) 32 F. 241, and Federal Trade Commission v. American Tobacco Co., 264 U. S. 298, 44 S. Ct. 336, 68 L. Ed. 696.

[2] Whatever may have been the view of some of the inferior federal courts under the early decisions, it is now firmly established that the process of the courts may be

exercised, pursuant to authority of Congress, in aid of investigations by administrative bodies. In Interstate Commerce Commission v. Brimson, supra, it was said:

"Whether the Commission is entitled to the evidence it seeks, and whether the refusal of the witness to testify or to produce books, papers, etc., in his possession, is or is not in violation of his duty or in derogation of the rights of the United States, seeking to execute a power expressly granted to Congress, are the distinct issues between that body and the witness. They are issues between the United States and those who dispute the validity of an act of Congress and seek to obstruct its enforcement, and these issues, made in the form prescribed by the act of Congress, are so presented that the judicial power is capable of acting on them.

The question so presented is substantially, if not precisely, that which would arise if the witness was proceeded against by indictment under an act of Congress declaring it to be an offense against the United States for any one to refuse to testify before the Commission after being duly summoned, or to produce books, papers, etc., in his 'possession, upon notice to do so, or imposing penalties for such refusal to testify or to produce the required books, papers, and documents. "A prosecution for such offense or a proceeding by information to recover such penalties would have as its real and ultimate object to compel obedience to the rightful orders of the Commission, while it was exerting the powers given to it by Congress; and such is the sole object of the present direct proceeding. The United States asserts its right, under the Constitution and laws, to have these appellees answer the questions propounded to them by the Commission, and to produce specified books, papers, etc., in their possession or under their control. It insists that the evidence called for is material in the matter under investigation; that the subject of investigation is within legislative cognizance, and may be inquired of by any tribunal constituted by Congress for that purpose. The appellees deny that any such rights exist in the general government, or that they are under a legal duty, even if such evidence be important or vital in the enforcement of the Interstate Commerce Act, to do what is required of them by the Commission. Thus has arisen a dispute involving rights or claims asserted by the respective parties to it; and the power to determine it directly, and, as between the parties, finally, must reside somewhere. It cannot be that the general government, with all the power conferred upon it by the people of the United States, is helpless in such an emergency, and is unable to provide some method, judicial in form and direct in its operation, for the prompt and conclusive determination of this dispute."

In the Harriman Case, supra, the power of the court to compel attendance and testimony of witnesses before the Interstate Commerce Commission in some of the proceedings before that Commission was recognized. It was there held that the statute, as it was then framed, did not cover the proceedings in which it was sought to require the evidence. The comment of the Supreme Court on the Harriman Case in Smith v. Interstate Commerce Commission, 245 U. S. 41, 44, 38 S. Ct. 30, 33 (62 L. Ed. 141) is applicable here:

"Appellant presses that case beyond its principle, and we may observe that section 13 has been amended and broadened since the decision of that case.[1] The inquiry in the present case is more immediate to the function of the Commission than the inquiry in that and comes within Interstate Commerce Commission v. Chicago, R. I. & Pac. Ry., supra, where it was said, at page 103: 'The outlook of the Commission and its powers must be greater than the interest of the railroads or of that which may affect those interests. It must be as comprehensive as the interest of the whole country. If the problems which are presented to it, therefore, are complex and difficult, the means of solving them are as great and adequate as can be provided,' and they must necessarily be expressed in generalities. A precise specification of powers might work a limitation and all not enumerated be asserted to be withheld."

---

[1] "Prior to the decision section 13 read as follows: 'Said Commission shall in like manner investigate any complaint forwarded by the railroad commissioner or railroad commission of any state or territory, at the request of such commissioner or commission, and may institute any inquiry on its own motion in the same manner and to the same effect as though complaint had been made.' Comp. St. 1916, § 8581. After the decision the section was amended to read as follows: '* * * And the Interstate Commerce Commission shall have full authority and power at any time to institute an inquiry, on its own motion, in any case and as to any matter or thing concerning which a complaint is authorized to be made, to or before said commission by any provision of this act * * * or relating to the enforcement of any of the provisions of this act.' Comp. St. § 8581."

The Interstate Commerce Commission and the Labor Board are administrative bodies. They do not exercise judicial power. The procedure before them up to the rendition of their decision is substantially the same. Congress has provided for the enforcement of some of the findings of the Interstate Commerce Commission through the courts. As to the Labor Board, in view of the limitation upon the power of the government to compel men to work against their will, it has made no such provision. The purpose back of the Labor Board Act (Comp. St. Ann. Supp. 1923, § 10071¼ee et seq.) is stated in Pennsylvania Railroad Co. Case, supra, as follows:

"The jurisdiction of the board to direct the parties to do what it deems they should do is not to be limited by their constitutional or legal right to refuse to do it. Under the act there is no constraint upon them to do what the board decides they should do except the moral constraint, already mentioned, of publication of its decision. * * * The statute does not require the railway company to recognize or to deal with, or confer with labor unions. It does not require employees to deal with their employers through their fellow employees. But we think it does vest the Labor Board with power to decide how such representatives ought to be chosen with a view to securing a satisfactory co-operation and leaves it to the two sides to accept or reject the decision. The statute provides the machinery for conferences, the hearings, the decisions and the moral sanction."

It is true that, when the finding reached by a court is not enforceable by any process of execution issuing from the court, nor is made by statute the final and indisputable basis of action, either by a governmental department or by Congress, the rendition of such a finding does not involve the proper exercise of judicial power. Respondent, however, fails to differentiate between the proceedings before the Labor Board and the proceedings in court to compel the testimony. It does not follow that, because the decision of the board is not enforceable under the statute in the courts of the United States and is merely published in order to guide public opinion, the proceedings in court to compel evidence upon which to base the finding of the board are advisory, within the meaning of the cases above cited. The judgment of the court is binding upon the witness, and that judgment under the statute may be enforced by the process of

the court. If resort may not be had to the courts to assist administrative bodies to obtain evidence in matters under investigation by them, even though those investigations do not lead to an order enforceable in the courts, it would be impossible for the government to perform its functions under the Constitution. Quoting again from the Brimson Case, supra, at page 485 (14 S. Ct. 1136):

"The inquiry whether a witness before the Commission is bound to answer a particular question propounded to him, or to produce books, papers, etc., in his possession and called for by that body, is one that cannot be committed to a subordinate administrative or executive tribunal for final determination. Such a body could not, under our system of government, and consistently with due process of law, be invested with authority to compel obedience to its orders by a judgment of fine or imprisonment. Except in the particular instances enumerated in the Constitution, and considered in Anderson v. Dunn, 6 Wheat. 204, and in Kilbourn v. Thompson, 103 U. S. 168, 190, of the exercise by either house of Congress of its right to punish disorderly behavior upon the part of its members, and to compel the attendance of witnesses, and the production of papers in election and impeachment cases, and in cases that may involve the existence of those bodies, the power to impose fine or imprisonment in order to compel the performance of a legal duty imposed by the United States, can only be exerted, under the law of the land, by a competent judicial tribunal having jurisdiction in the premises. See Whitcomb's Case, 120 Mass. 118, and authorities there cited."

In the case of Chapman, Petitioner, 166 U. S. 661, 17 S. Ct. 677, 41 L. Ed. 1154, the Supreme Court dealt with the validity of sections 102, 103, and 104 of the Revised Statutes (Comp. St. §§ 157–159), making it a misdemeanor for a witness to refuse to attend or answer questions before either house or any committee of either house of Congress. The court, sustaining those sections, said, at page 671 (17 S. Ct. 681):

"The history of Congressional investigations demonstrates the difficulties under which the two houses have labored, respectively, in compelling unwilling witnesses to disclose facts deemed essential to taking definitive action, and we quite agree with Chief Justice Alvey, delivering the opinion of the Court of Appeals, 'that Congress possessed the constitutional power to enact a statute

to enforce the attendance of witnesses and to compel them to make disclosure of evidence to enable the respective bodies to discharge their legitimate functions,' and that it was to effect this that the act of 1857 was passed. It was an act necessary and proper for carrying into execution the powers vested in Congress and in each house thereof."

And we must not lose sight of the declaration in the Brimson Case, supra, that the exercise of judicial power in punishing a witness for refusal to attend and testify is substantially the same as that involved in proceedings to compel the attendance and testimony of a witness. Interstate Commerce Commission v. Brimson, supra, at pages 447, 477 (14 S. Ct. 1125).

Nor is the inquiry before the Labor Board under consideration here a fishing expedition into private affairs, as was held to be the case in Harriman v. Interstate Commerce Commission, supra, and Federal Trade Commission v. American Tobacco Co., supra. A definite matter is under investigation by the board. The issues are made up with the particularity and precision of a lawsuit between litigants in a court. The comment of the Supreme Court in the Chapman Case, supra, is apposite:

"The questions were undoubtedly pertinent to the subject matter of the inquiry. The resolutions directed the committee to inquire 'whether any Senator has been, or is, speculating in what are known as sugar stocks during the consideration of the tariff bill now before the Senate.' What the Senate might or might not do upon the facts, when ascertained, we cannot say, nor are we called upon to inquire whether such ventures might be defensible, as contended in argument; but it is plain that negative answers would have cleared that body of what the Senate regarded as offensive imputations, while affirmative answers might have led to further action on the part of the Senate within its constitutional powers."

[3] The petition here presents the claim of a litigant, the Labor Board, to its right to the evidence essential to the specific investigation before it. That claim is brought before the court for determination by the regular proceedings which are established by law for the protection or enforcement of rights or the prevention, redress, or punishment of wrongs. The judgment of the court, if one is entered upon the petition, is enforceable by process. The rendition of such a judgment in such a proceeding involves the proper exercise of the judicial power of the courts of the United States.

The motion to dismiss case No. 4326 is overruled.

### On the Merits.

In disposing of the motion to dismiss, I held that this proceeding involves a proper exercise of the judicial power of the courts of the United States. I adhere to the conclusion which I then stated.

[4] The granting of the relief prayed for will not violate, in my opinion, any right protected by the Fifth Amendment. I do not agree with the interpretation placed by the defendant upon the provisions of the Transportation Act. The Labor Board, in my opinion, is acting within its statutory authority.

The action of the board does not force the employees to become parties to a proceeding. It does not place them in a situation different from that of any other witness. The statute invests the board with power and imposes upon it the duty to investigate the matters in controversy between the carriers and their employees, and to report concerning the same. It is given authority to summon witnesses to ascertain the facts upon which to make this report. Certainly a witness is not exempt because he happens to be an employee of one of the carriers, or is interested on one side or the other of the controversy.

Counsel for defendant have referred to Blair v. United States, 250 U. S. 273, 39 S. Ct. 468, 63 L. Ed. 979, and kindred cases. The principles stated in those cases, in my judgment, aid the plaintiff rather than the defendant. The court is not called upon here to aid in the formulation of a public policy. The Labor Board is charged with the duty, in certain situations, of rendering decisions concerning disputes between carriers and their employees. While the decision upon the issues involved (using that term in a broad sense) is not enforceable by process, it does have behind it the force of public opinion. "The function of the Labor Board is to direct public criticism against the party who, it thinks, justly deserves it." Under some circumstances this is more effective than fines or jail. The court is called upon to enforce the right of the Commission to the evidence required as a basis for a decision concerning the dispute which it is investigating; and, as I have already held, this function is a judicial one.

[5] It is contended that the prayer of the petition should be denied because of alleged

disqualification of the chairman of the Labor Board. The disqualification, it is asserted, arises from certain public statements manifesting prejudice against the defendant. The Labor Board does not act as an arbitrator within the true meaning of that term. It is an administrative body, clothed with certain statutory powers. Its acts, if arbitrary, are void. Whether it has acted aribitrarily, however, must be determined, not from the state of mind of one or more of its members, but from the inherent quality of the acts themselves.

A decree in accordance with the prayer of the bill will be entered.