## UNITED STATES v. NATIONAL LEAD CO.

(Circuit Court, D. New Jersey. June 16, 1896.)

1. PRACTICE—FEDERAL AND STATE COURTS—DISCOVERY—PRODUCTION OF BOOKS, ETC.

Although the practice which prevails in the highest courts of the state obtains in the federal courts, yet, where congress has legislated upon a matter of practice, such legislation becomes the sole and supreme guide, to the exclusion of the state code. Where, therefore, a party moved for examination of books and papers before trial, both under section 157 of the New Jersey practice act and section 724, Rev. St. U. S., *held*, that section 724, Rev. St. U. S., alone controlled the practice as to discovery of books and papers in the federal courts.

2. SAME.

By section 724, Rev. St. U. S., the power vested in the federal courts to require the production of books and papers is limited to causing such production at the trial, and such power is to be exercised only under circumstances where the parties might be compelled to produce the books and writings "by the ordinary rules of proceedings in chancery."

3. SAME—SELF-INCRIMINATING EVIDENCE.

Where, therefore, it appears that the production of books and papers would lay a party open to criminal prosecution, or might subject such party to a penalty or forfeiture, equity will deny such application, and the federal courts will do the same.

J. Kearney Rice, U. S. Dist. Atty, for the motion.

Charles A. Hess, opposed.

GREEN, District Judge. The plaintiff has filed a petition, duly verified, in the above-stated cause, setting forth, among other things, that the action was brought to recover certain moneys from the defendant, which it had obtained under alleged mistake, arising on the following facts: The defendant is a manufacturer of various compounds of lead, and for its business imported large quantities of lead ore, upon which were paid the duties lawfully levied by force of the statute in such case made and provided. This lead ore was used in the manufacture, among other things, of white lead, exported to and sold in foreign countries; and under the provisions of the statute referred to the defendant claimed from the plaintiff and was allowed and received large sums of money, portion of the duties theretofore paid upon the lead ore, by way of drawback or rebate, for the reason that the imported ore was not used in any product sold in this country, but was the component part of a product manufactured for export only. This allegation of the defendant, it is said, was false, and constituted a fraud upon the plaintiff. And thereupon, to quote the language of the plaintiff "said action was brought to recover the sum of $29,847.35, together with interest thereon from March 25, 1894, money had and received by the defendant for the use of the plaintiff, and being the amount of certain drawbacks or allowances on the exportation of certain materials exported by the said defendant, and wrongfully, illegally, fraudulently, and deceitfully claimed and obtained, and which were so received by the defendant, of and from the said plaintiff." The petition further alleges that the books of the defendant alone contain the actual statement of the materials used in the shipments for

which the drawbacks were obtained from the plaintiff by the defendant; that the plaintiff has no record of what was actually done with the lead ore imported by the defendant, and alleged to have been used in the manufacture of the white lead so exported; and that without an examination and inspection of the books of the defendant before trial it would be impossible for the plaintiff to prepare its case for presentation to the court. The prayer of the petition is that the court would make order that the plaintiff have liberty, under the supervision of the court, to examine before trial all the books of the defendant by what name soever the said books may be called, wherein are entered and recorded the importations and withdrawals for export of lead, upon which said drawbacks had been claimed and allowed. This petition, and the motion which is made in accordance with its prayer, are authorized, it is contended as well by the 157th section of the practice act of New Jersey (Revision, N. J. p. 873) as by the 724th section of the Revised Statutes of the United States. But the practice which obtains in the courts of this state cannot be invoked in this case; for, although it is quite true that, as a whole, the practice which prevails in the highest courts of the state prevails here as well by force of federal legislation as by virtue of a rule of this court, yet it is equally true that, when congress has legislated upon a matter of practice for the federal courts, such legislation becomes the sole and supreme guide, to the exclusion of the state code. Beardsley v. Littell, 14 Blatchf. 102, Fed. Cas. No. 1,185; Easton v. Hodges, 7 Biss. 324, Fed. Cas. No. 4,258; Parsons v. Bedford, 3 Pet. 433; McNutt v. Bland, 2 How. 17. Now, as it happens, congress has legislated upon this very subject of the production of books and documents in the possession of the parties litigant. Section 724, Rev. St. provides that:

"All courts of the United States shall have power on the trial of actions at law, on motion and due notice thereof being given, to require the parties to produce books or writings in their possession or power, which contain evidence pertinent to the issue, in cases and under circumstances where they might be compelled to produce the same by the ordinary rules of proceedings in chancery."

Within the terms of this statute alone must be found, then, the right of the plaintiff to ask for and receive the discovery it seeks; and it is quite apparent that the motion as it is now made, or as it is expressed in the petition, cannot be granted. The application is that the court should require the defendant to produce now, immediately, before trial, certain books alleged to contain matters pertinent to the issue, that they may be examined by the plaintiff for the very purpose of preparing its cause for trial. But by the very words of the statute the exercise of the power vested in federal courts to require production of such books or writings is limited to causing such production to be made at the trial. The words are not, broadly, "in any action at law at any time" the court may require the production of books, but there is an express limitation found in the words "on the trial of any action." It is, then, at that particular time—at the trial, and at no other time—that the

court may, in its discretion, order books to be produced; and that this is the proper construction of this statute is settled by many well-considered cases. Thus in Iasigi v. Brown, 1 Curt. 401, Fed. Cas. No. 6,993, Mr. Justice Curtis, in construing this statute, says:

"By common law a notice to produce a paper merely enables the party to give parol evidence of its contents, if it be not produced. This act of congress has attached to the nonproduction of a paper ordered to be produced at the trial the penalty of a nonsuit or default. This is the whole extent of the law. It does not enable parties to compel the production of papers before trial, but only at the trial, by making such a case and obtaining such an order as the act contemplates."

In Triplett v. Bank, 3 Cranch, C. C. 646, Fed. Cas. No. 14,178, the court broadly held that the party calling for books has no right to examine them before trial, to see whether there be not something in them pertinent to the issue. Many other cases could be cited to the same effect, but it is unnecessary to do so. The words of the statute are so clear that no construction other than this obvious one could be made. It is at the trial that books and documents are to be produced, not at any other time. It follows that this motion to require the defendant to produce its books before trial, for inspection, cannot be granted.

But there is a more serious objection to the granting of this motion, and which is radical in its nature. Although the pending suit is, in terms, simply one to recover money had and received by the defendant to and for the use of the plaintiff, yet it is evident that the real gravamen of the action is the alleged fraud and misfeasance of the officers, agents, and servants of the defendant corporation, committed by them, or some of them, in the name and for the benefit of the corporation, in the making and presenting of false, deceitful, and fraudulent claims for drawbacks or rebates of duties on imported lead ore, and thus unlawfully obtaining the very large amounts of money involved in this suit. To obtain such rebates or drawbacks, the statute requires the claim to be verified by oath. This was done in the claim made by the defendant. If, therefore, the allegations of plaintiff are true, the officers and agents of the defendant corporation who were guilty of making these fraudulent claims have laid themselves open to criminal prosecution, and the corporation itself has become liable to the penalties and forfeitures affixed to such acts by the statute. Now, the plaintiff alleges that the evidence of these unlawful acts is to be found in the books of the defendant, and for that very reason asks for the order requiring their production. But because of that very reason the order asked for ought not to be granted. It is not necessary to base the refusal to grant the order, under these circumstances, upon the protective clauses of the constitution of the United States. Just, and in fact peremptory, reasons for such refusal are to be found clearly written in the statute, which confers upon the court the power sought to be invoked. Such power is, by the words of the statute, to be exercised only under circumstances where the parties might be compelled to produce the books and writings "by the ordinary rules of proceedings in chancery"; in

other words, the order asked for is to be made only where circircumstances would justify a discovery in proceedings in equity. This limitation upon the exercise of this power to require the production of books and writings absolutely bars the granting of the present motion, for it is a cardinal rule of chancery that a discovery will never be decreed when it might tend to convict the party of a crime or work a forfeiture of his property. Nor is this rule confined to cases in which discovery must necessarily subject the defendant to pain and penalties, but is broadly extended to cases where it may do so. The discovery sought may, indeed, have no immediate tendency to criminate the defendant, but that does not militate against the enforcement of the rule that the defendant is not bound to accuse himself of crime, or to furnish any evidence whatever which shall lead to any accusation of that nature. I Daniell, Ch. Prac. 563; Marsh v. Marsh, 16 N. J. Eq. 391. As was tersely said by Mr. Justice Bradley in Boyd v. U. S. 116 U. S. 616, 6 Sup. Ct. 524, in commenting upon this statute:

"Compulsory discovery by extorting the party's oath, or compelling the production of his private books and papers, to convict him of crime, or to forfeit his property, is contrary to the principles of a free government. It is abhorrent to the instincts of an American. It may suit the purposes of despotic power, but it cannot abide the pure atmosphere of political liberty and personal freedom."

Hence it is clear that this statute, instead of authorizing the order asked for by the plaintiff, requires its denial. Equity has placed its veto upon such applications when made under circumstances which characterize this case, and, if equity would refuse to decree discovery, this court is powerless to order it to be made. The motion is denied, and the petition is dismissed.