**Application to Enforce an Administrative Subpoena, of Edward J. SHAUGH-NESSY, District Director, Immigration and Naturalization Service, New York District, Petitioner,**

**v.**

**Emmanuel BACOLAS, Respondent.**

United States District Court
S. D. New York.

Aug. 19, 1955.

16

Lloyd F. MacMahon, U. S. Atty. for the Southern Dist. of New York, New York City, for petitioner (Arthur B. Kramer, Asst. U. S. Atty., New York City, of counsel).

William B. Rothschild, New York City, for respondent.

LUMBARD, Circuit Judge.

This is a proceeding in which respondent seeks vacation of an order of this Court signed by Judge Dawson enforcing an administrative subpoena issued under 8 U.S.C.A. § 1225(a). This order required respondent to appear and give testimony at a specified time and place before a Special Inquiry Officer in deportation proceedings pending against Joanna Zaffreas, and to "bring with him cancelled checks and bank statements for the years 1953, 1954 and to date of 1955 of both business and personal checking accounts * * * "

Respondent seeks vacation of the above-described order on several grounds: First, because the petitioner has not shown the relevance and materiality of the testimony and documents sought; Second, because the order invades the privacy of the respondent; Third, because production of the requested records might incriminate the respondent; and finally because the business records sought are the records of the Smiling Lady Corp. and not respondent's own.

In their affidavits counsel for petitioner aver that respondent had "extensive knowledge and dealings with the alien under deportation proceedings and would

give material and relevant testimony concerning the fraudulent manner in which she procured her immigration visa." It is further averred that "The Immigration and Naturalization Service has information that respondent paid out sums of money to, or on behalf of the alien, Joanna Zaffreas."

■ Respondent has not denied that he could give testimony relevant to the deportation proceeding nor that the checks and statements ordered to be produced are relevant to the inquiry. In view of the broad powers of inquiry granted administrative agencies and officers in ferreting out violations of the laws they enforce, Hagen v. Porter, 9 Cir., 1946, 156 F.2d 362, certiorari denied, 1946, 329 U.S. 729, 67 S.Ct. 85, 91 L.Ed. 631; Walling v. American Rolbal Corp., 2 Cir., 1943, 135 F.2d 1003; and see United States v. Morton Salt Co., 1950, 338 U.S. 632, 642, 70 S.Ct. 357, 94 L.Ed. 401, there has been a sufficient showing of relevance and materiality to justify the issuance of the order enforcing this administrative subpoena.

■ There is no merit in the respondent's argument founded upon an alleged right of privacy. Once the required relevance has been shown, a Court is justified in invading his privacy to the extent of ordering giving of testimony and the production of documents required for the administrative inquiry.

■ This brings us to the question whether the respondent has a valid claim of privilege on the ground that the testimony and documents sought might incriminate him. It is of course premature at this stage of the proceedings for him to assert the privilege with respect to testimony he may be asked to give. Only after individual questions have been propounded can it be determined whether it may reasonably be claimed that the answers will incriminate him. He must therefore appear before the Special Inquiry Officer and raise such objections at that time. See In re Minker, D.C.E.D. Pa., 1953, 118 F.Supp. 264, 266, reversed on other grounds, 3 Cir., 1955, 217 F.2d

350, certiorari granted 349 U.S. 904, 75 S.Ct. 582.

■ The order to produce documents raises a different question. Since particular documents have already been requested, there is a sufficient basis for assertion of the claim of privilege at this stage of the proceedings. Petitioner contended on argument that because the respondent is ordered only to bring the requested documents with him his constitutional rights will be in no way prejudiced since he can interpose his objection when asked to produce the documents for inspection. The utility of an order merely to bring the documents with him is, however, questionable. Since it still leaves the respondent free to refuse to produce the documents for inspection, it would merely require, after such refusal, an order of the Court directing him to produce them. At that time the question of privilege would have to be decided, and it does not appear that the Court would be in any better position to decide it then than it is now. It has been held that a claim of privilege is a sufficient basis for quashing a subpoena duces tecum requiring the witness to "bring documents with him", Brush v. Harkins, D.C.S.D. Mo., 1950, 9 F.R.D. 681; cf. United States v. National Lead Co., 1896, 75 F. 94. Although in one case the subpoena was sustained and the witness left to assert his privilege when asked to produce the documents, In the Matter of Chopnick, 6 Fed.Rules Serv. Sec. 45b, 413, case 1 (S.D.N.Y.1942), it appeared there that a wide variety of documents was sought and it was clear that the attorney-client privilege claimed would only apply to some few among them. Moreover it appears that those documents were to be produced in a hearing before a District Court where there would be an opportunity for a speedy ruling by the judge as each document was called for. Since that is not the case here and this is an appropriate time to evaluate the claim of privilege, we proceed to a ruling on that question.

■ Under 8 U.S.C.A. § 1324(a) (4) any person who "willfully or knowingly

encourages or induces, * * * the entry into the United States of any alien, * * * not lawfully entitled to enter or reside within the United States * * * shall be guilty of a felony * * *." It seems clear that any of the checks or bank statements sought which are in fact relevant to the deportation proceeding might tend to establish or might lead to other evidence tending to establish that respondent has violated this provision. Under these circumstances the respondent might reasonably fear that the production of such documents would incriminate him and his claim of privilege must be upheld. Blau v. United States, 1950, 340 U.S. 159, 71 S.Ct. 223, 95 L. Ed. 170.

Respondent's own affidavit indicates, however, that this claim of privilege may not extend to all of the documents ordered to be produced. He makes the following statement under oath: "The order entered herein requires the production of my business, as well as my personal, bank vouchers and statements. I am an officer and employee of Smiling Lady Corp., a domestic corporation, and all business records are the records of such corporation, and are not my business records and I should not be required to produce same." The cases clearly establish that the privilege against self-incrimination is a personal privilege and does not apply to the records of a corporation even though such records might tend to incriminate either the corporation or the officer summoned to produce them. United States v. White, 1944, 322 U.S. 694, 699, 64 S.Ct. 1248, 88 L.Ed. 1542 and cases there cited; United States v. Field, 2 Cir., 1951, 193 F.2d 92, 96, certiorari denied 342 U.S. 894, 72 S.Ct. 202, 96 L.Ed. 670, certiorari dismissed, 1952, 342 U.S. 908, 72 S.Ct. 303, 96 L.Ed. 679. Nor can respondent refuse to produce such records on the ground that they belong to the corporation rather than to him. Since his own affidavit reveals that he is an officer of the Smiling Lady Corp., he appears to be an appropriate person to receive a subpoena requiring production of corporate records. Although it is proper to direct such a subpoena to the corporation, it is equally proper, and perhaps preferable, to direct it to the officer having custody of the records sought. See Wilson v. United States, 1911, 221 U.S. 361, 374, 31 S.Ct. 538, 55 L.Ed. 771; Keiffe v. La Salle Realty Co., 1927, 163 La. 824, 112 So. 799, 801, 53 A.L.R. 82; cf. United States v. Fleischman, 1950, 339 U.S. 349, 353 note 4, 70 S.Ct. 739, 94 L.Ed. 906, rehearing denied 339 U.S. 991, 70 S.Ct. 1017, 94 L.Ed. 1391.

There might be some doubt about broadening the order beyond the administrative subpoena by requiring production of corporate documents, but here the respondent has indicated in his affidavit that he understands the business records requested to be the records of the Smiling Lady Corporation. This indicates that he will not be prejudiced by an order including those documents, and there seems no reason to cause the additional delay and expense which would be involved in issuing a second administrative subpoena pertaining to corporate documents.

Some problem may arise in drawing the line between personal and corporate records and accounts but the Special Inquiry Officer can, of course, pursue whatever questioning is necessary to determine that all relevant corporate checks and bank statements have been produced. If respondent fails to produce or attempts to suppress corporate records by denominating them personal, he will do so at his peril.

The subpoena is therefore modified to require that Bacolas appear and testify and that he bring with him all cancelled checks and bank statements for the years 1953, 1954 and 1955 to date, of checking accounts of the Smiling Lady Corporation or in his name as an officer, agent, or employee of the Smiling Lady Corporation. As so modified the subpoena is enforced.