# SMITH *v.* INTERSTATE COMMERCE COMMISSION.

## APPEAL FROM THE SUPREME COURT OF THE DISTRICT OF COLUMBIA.

No. 337. Argued October 2, 3, 1917.—Decided November 5, 1917.

The Senate, by resolution, directed the Interstate Commerce Commission to investigate, take proof and report to it, among other things, what amount, if any, certain railroad companies, or any of them, had subscribed, expended or contributed to prevent other railroads from entering any of their territory, for maintaining political or legislative agents, for contributing to political campaigns, or for creating sentiment in favor of any of the plans of any of the railroads. In pursuance of this resolution, the Commission ordered an investigation, which was consolidated with another, arising from a complaint made by an individual and limited to the alleged improper issuance of free passes. At the hearing the president of one of the companies, subpœnaed as a witness, was asked by the counsel for the Commission what, if any, funds his company expended, in certain States, in certain years, for political campaign purposes, and charged upon its books to operating or legal expenses or construction account; also to explain certain vouchers, showing expenditures by the company but not the purpose; also whether the company expended funds in a certain State "in a campaign against rate reductions," and whether it was the company's policy to make political compaign contributions. The witness having refused to answer, upon advice of counsel, the court below, upon the petition of the Commission, ordered him to do so.

*Held:* (1) That the investigation, particularly as related to and defined by the questions asked, was not to be regarded as directed to the political activities of the carrier or to its efforts to suppress competition, but as seeking to ascertain the amounts of expenditures made by the carrier, their allocation, and the manner in which they were charged upon its books.

(2) That such an investigation was within the competency of the Commission and the questions proper, in view of the general purposes and objects of the Act to Regulate Commerce, the regulatory power of the Commission in relation thereto, and the particular authority and

means given to enable it to perform its duty—viz: Authority under § 12 to inquire into the management of the business of carriers, keep itself informed as to the manner and method in which the same is being conducted, and to obtain from carriers full and complete information; under § 13, to institute inquiries of its own motion; under § 20, to require detailed accounts of the expenditures and revenues of carriers and exhibits of their financial operations;— and that the questions were pertinent to the duty of the Commission under § 21 to report information collected by it to Congress.

Under § 13 of the Act to Regulate Commerce, as amended by the Act of June 18, 1910, c. 309, 36 Stat. 550, § 11, the Commission's power of investigation is not necessarily confined to cases in which evils or abuses are definitely charged, and remedies are proposed, in words, either by the Commission or by parties complaining before it; nor, *semble*, is its right of inquiry in a particular proceeding necessarily to be measured by the scope of the proceeding as defined by the order instituting it.

44 W. L. Rep. 626, affirmed.

Petition of the Interstate Commerce Commission to require the attendance before it of appellant, president of the Louisville & Nashville Railroad Company, an interstate carrier, to answer certain questions theretofore asked him in a proceeding then pending before the Commission.

The petition described the Commission as an administrative tribunal and recited the powers conferred upon it by §§ 1, 15, 12, 13, 20 and 21 of the Act of Congress to Regulate Commerce, approved February 4, 1887, as subsequently amended.

That by a resolution of the United States Senate of November 6, 1913, the Commission was directed to investigate, take proof and report to the Senate as soon as practicable upon certain practices and financial relations of the Louisville & Nashville Railroad, the Nashville, Chattanooga & St. Louis Railway and other carriers. The resolution was set out. Its twelfth paragraph is as follows:

"What amount, if any, the Louisville and Nashville Railroad, the Nashville, Chattanooga and St. Louis Railway, the Nashville and Decatur Railroad, and the Lewis-

burg and Northern Railroad, all or any of them, have subscribed, expended or contributed for the purpose of preventing other railroads from entering any of the territory served by any of these railroads, for maintaining political or legislative agents, for contributing to political campaigns, for creating sentiment in favor of any of the plans of any of said railroads."

The other paragraphs concern the relation of the railroads to one another, the control, if any, exercised by the Louisville & Nashville over the others, by stock ownership, leases or arrangements, and whether but for these the roads would be competitive and if through such means rates were fixed and maintained. The resolution is set out in full in *United States* v. *Louisville & Nashville R. R. Co.*, 236 U. S. 318, 324.

That thereafter the Commission instituted a proceeding in pursuance of such resolution and it was ordered that the proceeding be set for hearing at such times and places and that such persons be required to appear and testify or to produce books, documents and papers as the Commission might thereafter direct; and that the investigation be carried on in the meantime by such other means and methods as might be deemed appropriate. A copy of the order was served on the Louisville & Nashville and other railroads.

That subsequently, on March 20, 1916, the order of the Commission was amended by adding to the order the provision that after the hearings and investigations authorized the Commission might issue such order or orders in the matter as might be proper and necessary in the premises and that Case No. 8488, *Luke Lea* v. *Louisville & Nashville Railroad Company et al.*, be consolidated for hearing with the proceeding upon one record at such times and places as the Commission might direct. Copies of the order and original order were served on the railroads.

That pursuant to such orders a meeting was had April

27, 1916, and pursuant to adjournment resumed in the City of Washington May 4, 1916. At such hearings appellant appeared in response to a subpœna and certain questions were addressed to him.

He testified that there was no connection between the reckless dissipation of the funds of a railroad in political campaigns and the adjustment of reasonable rates, even if the contribution was of the sum of $500,000 or $20,000,000, as the adjustment of rates· is governed by conditions entirely independent of the revenues of a railroad. In illustration he adduced the adjustment of rates of bankrupt roads operated by receivers of courts which he testified are handled in the same way and arrived at in the same manner as they are by solvent roads.

The following questions were then asked him by counsel for the Commission, omitting those not now relevant. We number them for convenience of reference:

1. "I will ask you, Mr. Smith, if you know of any funds of the Louisville & Nashville Railroad expended in Tennessee for political campaign purposes during the year 1915 and charged upon the books of that carrier to operating expenses.

2. "Can you tell us what funds of the Louisville & Nashville Railroad Company were expended in the State of Alabama during the years 1912 and 1913 for political campaign purposes and charged on the books of that carrier to operating expenses or to construction account?

3. "Can you tell us of your own knowledge whether these expenditures of the funds of the Louisville & Nashville Railroad Company for political purposes were charged in the operating expense account or construction account of either the Louisville & Nashville Railroad or the Nashville, Chattanooga & St. Louis Railway? Can you tell us whether these expenditures were charged on the books of the Louisville & Nashville Railroad to legal expenses?

4. "Among the vouchers in the files of the Louisville & Nashville Railroad, found by the examiners of the Interstate Commerce Commission, there appears one, No. 2282, February, 1910, in favor of the Columbia Trust Company for $20,715.06 for special fees paid under the direction of the president. The examiners were refused all information regarding this voucher. Can you tell us what it was about and what the voucher was for?

5. "Can you tell us why the entry in reference to this $20,000 voucher was made in such a way as to give no information as to the purpose of this expenditure?

6. "Among the vouchers found by the accountants for the Commission in the files of the Lousiville & Nashville Railroad, appears one numbered 391, dated May 5, 1907, in favor of the National Bank of Commerce, for $15,000 issued for certain expenditures authorized by the president. All further information was refused the accountants. The books give no further information. Can you advise us or enlighten us as to the purposes of this $15,000 voucher?

7. "Did the Louisville & Nashville Railroad Company, through you or by your direction, expend approximately $34,800 in Alabama through the Johnson-Dallas Agency in a campaign against rate reductions as advocated by former Governor Comer, of that State?

8. "Have you personal knowledge of any funds of the Louisville & Nashville Railroad Company expended in Alabama through the Johnson-Dallas Agency in a campaign against rate reductions?

9. "Is it the policy of the Louisville & Nashville Railroad Company to make political campaign contributions, if you know?"

All of the questions the witness declined to answer upon the advice of counsel.

The answer of appellant to the petition challenged in general and in detail the power of the Commission and

urged that the Commission is entirely a ministerial tribunal, having only the powers given it by act of Congress, and that those, with few exceptions, are confined to the enforcement of the act, and that the latter as amended "does not attempt to regulate the politics or the political activities of common carriers, nor the subject of their endeavoring to exclude competitors from their territories."

That the object of the questions asked by the Commission "was to delve into questions purely political" and to ascertain whether the witness or the company believed that a railroad company had a right to engage in political campaigns and to make political contributions and whether it had been the policy of the company to make contributions of funds to such campaigns and whether the company had in the past engaged in such practices. It is asserted that all such matters are outside of the jurisdiction of the Commission.

That the proceeding is a consolidation of two proceedings, Nos. 6319 and 8488, that Luke Lea is the open and sole complainant in the latter and the instigator and real complainant in the other, which was instituted by the Commission without there being a nominal complainant, but pursuant to a resolution of the United States Senate introduced by Lea, then a member of the Senate and the complainant in No. 8488, which is confined to an alleged improper issue of free passes.

Certain activities of Lea are stated and certain resentments and motives of his are urged as having actuated him and a want of power upon the part of the Commission is repeated and the refusal to answer the questions hence asserted to be justified.

The Commission moved to strike out certain portions of the answer, which was denied.

The court required appellant to answer the questions, and from its order this appeal is prosecuted.

*Mr. Helm Bruce* and *Mr. Edward S. Jouett,* with whom *Mr. Henry L. Stone* was on the brief, for appellant:

A witness may lawfully refuse to answer if the testimony called for does not relate to the matter under investigation or if the matter broached by the Commission is one which it is not legally entitled to investigate. *Interstate Commerce Commission* v. *Brimson,* 154 U. S. 447. The subject of an investigation is defined by the order of the Commission instituting the investigation. Every investigation which the Commission makes is not as broad as its power to investigate. The matter here under investigation according to the Commission's order was the matter "directed" to be investigated by the Senate Resolution. The language of the order is too plain for doubt. Nothing outside of the "several matters and things set forth and referred to in the said resolution" is ordered to be investigated. See Solicitor General's brief in *United States* v. *Louisville & Nashville R. R. Co.,* 236 U. S. 318. And the case is confined to the twelfth paragraph of the resolution, the witness not having refused answers concerning other subjects. This paragraph relates exclusively to expenditures for political purposes and for suppressing competition. Neither the question of reasonable rates nor any direction or supervision of the manner of keeping accounts of expenditures was being investigated by the Commission. The questions as to amounts expended on political activities and suppression of competition were simply asked as a measure of the extent of the company's activities in those ways. Even if the investigation had concerned the reasonableness of rates, expenditures would not have become material unless the company had claimed that its rates could not be lowered without making its receipts less than cost, and if that claim had been made it would have been idle to investigate merely expenditures upon political activities—necessarily slight as compared with all expenditures.

The subject of political activity is not one which the Commission is "legally entitled to investigate." Nor is what a carrier may do to mould public opinion. The Commission's powers are confined to administering the Act to Regulate Commerce, and these subjects are not covered by that act. The Commission repeatedly has said that its powers are limited to enforcing the act. 2d Annual Report, p. 21; 13th Annual Report, p. 11; 14th Annual Report, p. 10; *Traders & Travellers Union* v. *Philadelphia R. &c. Co.*, 1 I. C. C. 371, 374; *New York Produce Exchange* v. *Baltimore & Ohio R. R. Co.*, 7 I. C. C. 612, 658; *Spring* v. *Baltimore & Ohio R. R. Co.*, 8 I. C. C. 443, 456; *Haines* v. *Chicago, Rock Island R. R. Co.*, 13 I. C. C. 214, 216. See *Texas & Pacific Ry. Co.* v. *Interstate Commerce Commission*, 162 U. S. 197, 221.

Neither does the act relate to the matter of suppressing competition. This is left to the Anti-Trust Act. *Spring* v. *Baltimore & Ohio R. R. Co., supra; United States* v. *Joint-Traffic Association*, 171 U. S. 505, 565. The only possible exception is the fifth section of the former act forbidding pooling and division of earnings—a subject which the Commission's order in no way involves. The amendment of § 13 by the Act of June 18, 1910, does not change the principle settled by the *Brimson Case, supra*. Whatever may be the Commission's power of investigation, when the subject as limited and defined by its order is not "one which the Commission is legally entitled to investigate," then no question relating to it can properly be asked. The amendment confines the power strictly to matters covered by the Commerce Act. Such are its words. It does not empower the Commission to inquire into everything pertaining to commerce. Whether the language of the amendment, "concerning which any question which may arise under any of the provisions of this act," refers to questions which have arisen before investigation or questions which may possibly arise in the

future, is not material in this case where the Commission chose to limit the investigation by the language of its order. But these words of the amendment are not susceptible of the broader meaning. The granting of "such autocratic power" would require "explicit and unmistakable words." *Harriman* v. *Interstate Commerce Commission,* 211 U. S. 407. Although the amendment was passed after the decision in the *Harriman Case,* Congress did not use the "explicit and unmistakable words" and could not, therefore, have intended to make such a grant. A question may not be said to *have arisen* merely because it is asked by the counsel for the Commission in the examination of a witness, where the question does not relate to the subject of investigation fixed by the order. The questions concerning expenditures in political campaigns in Tennessee and in Alabama manifestly related to political activities merely, and were clearly beyond the Commission's power to investigate.

*Mr. Joseph W. Folk* for the Interstate Commerce Commission.

MR. JUSTICE MCKENNA, after stating the case as above, delivered the opinion of the court.

The fundamental contention of appellant is that the Interstate Commerce Commission has no power to ask the questions in controversy and in emphasis of this he asserts "the inquiry was confined exclusively to supposed political activities and efforts to suppress competition." And these, it is further asserted, "are not matters which the Commission 'is legally entitled to investigate.'" The contention is attempted to be supported by the insistence that the investigation was provoked and prosecuted solely in obedience to the Senate resolution and neither in exercise of the judgment of the Commission nor in pursuance of a complaint made to it. And the twelfth paragraph of

the resolution is dwelt upon as directing and controlling
the inquiry as to what amount, if any, the railroads "have
subscribed, expended or contributed for the purpose of
preventing other railroads from entering any of the terri-
tory served by any of these railroads, for maintaining
political or legislative agents, for contributing to political
campaigns, for creating sentiment in favor of any of the
plans of any of said railroads."

If, however, we advert to the questions we observe
that the matters dwelt on by appellant are incidents only,
having the purpose, it may be, in one sense to ascertain
the "amount, if any," subscribed or expended, but not
having the purpose in the sense of the questions, which is:
Whether the amount subscribed or expended was charged
to operating or legal expenses. The latter purpose is more
special than the other, and, we may say in passing, does
not necessarily involve even a criticism of the other, in-
volves only the display in the accounts of the carriers of
the amount expended and its allocation. To this limita-
tion the investigation is reduced, and the question is,
being so reduced, Is it within the powers of the Commis-
sion?

The Interstate Commerce Act confers upon the Com-
mission powers of investigation in very broad language and
this court has refused by construction to limit it so far
as the business of the carriers is concerned and their rela-
tion to the public.[1] And it would seem to be a necessary
deduction from the cases that the investigating and super-
vising powers of the Commission extend to all of the activi-
ties of carriers and to all sums expended by them which
could affect in any way their benefit or burden as agents

---

[1] *Wilson* v. *New*, 243 U. S. 332; *Interstate Commerce Commission* v.
*Baird*, 194 U. S. 25; *Interstate Commerce Commission* v. *Goodrich Transit
Co.*, 224 U. S. 194; *United States* v. *White Star Line*, 224 U. S. 194;
*Hale* v. *Henkel*, 201 U. S. 43; *Interstate Commerce Commission* v. *Chicago,
R. I. & Pac. Ry. Co.*, 218 U. S. 88.

of the public.  If it be grasped thoroughly and kept in attention that they are public agents, we have at least the principle which should determine judgment in particular instances of regulation or investigation; and it is not far from true—it may be it is entirely true, as said by the Commission—that "there can be nothing private or confidential in the activities and expenditures of a carrier engaged in interstate commerce."

Turning to the specialties of the Interstate Commerce Act we find there that all charges and treatment of all passengers and property shall be just and reasonable, and there is a specific prohibition of preferences and discriminations in all the ways that they can be executed, with corresponding regulatory power in the Commission.  And authority and means are given to enable it to perform its duty.  By § 12 it is authorized to inquire into the management of the business of carriers and keep itself informed as to the manner and method in which the same is conducted, and has the right to obtain from the carriers full and complete information.  It may (§ 13) institute an inquiry of its own motion, and may (§ 20) require detailed accounts of all the expenditures and revenues of carriers and a complete exhibit of their financial operations and prescribe the forms of accounts, records and memoranda to be kept.  And it is required to report to Congress all data collected by it.

It would seem to be an idle work to point out the complete comprehensiveness of the language of these sections and we are not disposed to spend any time to argue that it necessarily includes the power to inquire into expenditures and their proper assignment in the accounts, and the questions under review, we have seen, go no farther. They are incidental to an investigation as to the "manner and method" (§ 12) in which the business of the carriers is conducted; they are in requisition of a detailed account of their expenditures and revenues and an exhibit of their

financial operations (§ 20), and the answers to them may be valuable as information to Congress (§ 21).

A limitation, however, is deduced from § 13. It is said to be confined to cases where an inquiry is instituted "as to any matter or thing concerning which a complaint is authorized to be made, . , . or concerning which any question may arise under any of the provisions" of the act "or relating to the enforcement of any of the provisions" of the act. In other words, that the inquiry is determined by the manner of procedure. The objection overlooks the practical and vigilant function of the Commission. To sustain it appellant seems to urge that there must be put into words by some complainant or by the Commission, if it move of itself, some definite charge of evil or abuse, and put into expression some definite remedy; and that an inquiry must not transcend either charge or remedy. To so transcend, appellant urges, would be an exercise of autocratic power and is condemned in *Harriman* v. *Interstate Commerce Commission*, 211 U. S. 407.

Appellant presses that case beyond its principle. And we may observe that § 13 has been amended and broadened since the decision of that case.[1] The inquiry in the present case is more immediate to the function of the

---

[1] Prior to the decision § 13 read as follows: "Said Commission shall in like manner investigate any complaint forwarded by the railroad commissioner or railroad commission of any State or Territory, at the request of such commissioner or commission, and may institute any inquiry on its own motion in the same manner and to the same effect as though complaint had been made."

After the decision the section was amended to read as follows: . . . "and the Interstate Commerce Commission shall have full authority and power at any time to institute an inquiry, on its own motion, in any case and as to any matter or thing concerning which a complaint is authorized to be made, to or before said commission by any provision of this Act, or concerning which any question may arise under any of the provisions of this Act, or relating to the enforcement of any of the provisions of this Act."

Commission than the inquiry in that and comes within *Interstate Commerce Commission* v. *Chicago, R. I. & Pac. Ry., supra,* where it was said, at p. 103: "The outlook of the Commission and its powers must be greater than the interest of the railroads or of that which may affect those interests. It must be as comprehensive as the interest of the whole country. If the problems which are presented to it therefore are complex and difficult, the means of solving them are as great and adequate as can be provided." And they must necessarily be expressed in generalities. A precise specification of powers might work a limitation and all not enumerated be asserted to be withheld.

We find it difficult to treat counsel's argument as seriously as they urge it. The expenditures of the carriers essentially concern their business. Section 20 declares it and gives the Commission power to require a detail of them, and necessarily not only of their amount but purpose and how charged. And the Commission must have power to prevent evasion of its orders and detect in any formal compliance or in the assignment of expenses a "possible concealment of forbidden practices."

It may be said that our comments are not applicable to questions numbered 7 and 8, which relate to the expenditure of money in Alabama "in a campaign against rate reductions." That is, those questions are not directed to "political activities" strictly so called, nor to the suppression of competition. They are directed, however, to the use of funds in a campaign against state legislative action. But this, appellant asserts, is at the farthest an attempt to "influence legislation or to mould public opinion" and that there is nothing in the Interstate Commerce Act "which forbids it or gives to the Commission any power to investigate the subject." And it is besides urged, as it is urged against the other questions, that they do not relate to "the subject under investiga-

tion," which is strictly defined by the Senate resolution, to which, it is contended, the order of the Commission was responsive and subservient, and was to be and is confined to the efforts simply "of the railroad companies in political matters and in attempts to suppress competition." Indeed, the servility of the Commission to the Senate's resolution is the basic and insistent contention of appellant and taints, he further contends, all that the Commission did.

The contention ascribes too much dominance to the resolution and puts out of view or unduly subordinates the invocation of the powers of the Commission by the complaint of Lea and the interval of two years between it and the resolution, and puts out of view besides the independent and inherent powers of the Commission to which we have adverted.

Abstractly speaking, we are not disposed to say that a carrier may not attempt to mould or enlighten public opinion, but we are quite clear that its conduct and the expenditures of its funds are open to inquiry. If it may not rest inactive and suffer injustice, it may not on the other hand use its funds and its power in opposition to the policies of government. Beyond this generality it is not necessary to go. The questions in the case are not of broad extent. They are quite special, and we regard them, as the learned judge of the court below regarded them, as but incident to the amount of expenditures and to the manner of their charge upon the books of the companies. This, we repeat, is within the power of the Commission. The purpose of an investigation is the penetration of disguises or to form a definite estimate of any conduct of the carriers that may in any way affect their relation to the public. We cannot assume that an investigation will be instituted or conducted for any other purpose or in mere wanton meddling.

*Order affirmed.*