**UNITED STATES and Interstate Commerce Commission, Plaintiffs,**

v.

**CITY NATIONAL BANK,**
**Defendant,**

**William T. Brady, Intervenor.**

**No. CV 75-2744-WPG.**

United States District Court,
C. D. California.

Nov. 7, 1975.

William D. Keller, U. S. Atty., Frederick M. Brosio, Jr., Asst. U. S. Atty., Chief, Civ. Div., Stephen D. Petersen, Asst. U. S. Atty., Los Angeles, Cal., for plaintiffs; Miles L. Kavaller, Asst. Regional Counsel, Interstate Commerce Commission, of counsel.

Edward O. C. Ord, San Marino, Cal., Hill, Farrer & Burrill, William S. Scully, Jr., Los Angeles, Cal., for intervenor.

Bradley Bunch, Beverly Hills, Cal., for defendant City Nat. Bank.

MEMORANDUM OF DECISION

WILLIAM P. GRAY, District Judge,

In this action the Interstate Commerce Commission seeks to enforce a subpoena *duces tecum* that it directed to the City National Bank, requiring the

latter to produce certain records pertaining to a purported sale of Trans-United, a carrier subject to ICC regulation, by W. T. Brady in 1972. Mr. Brady was granted leave to intervene on August 18, 1975, and now opposes the enforcement of the subpoena.*

The issue has been briefed on behalf of the parties and on behalf of Mr. Brady, and the matter was argued on September 8, 1975, and taken under submission by the court. For reasons hereinafter stated, an order will be issued by this court enforcing the subpoena.

The ICC seeks the Bank's records of the 1972 "sale" in order to determine the past and present ownership of Trans-United and to pass on the pending applications of the latter for additional operating authority. The basic issue in this petition is the scope of the ICC's investigative authority.

█ Brady first claims that the subpoena in question is void because it does not comply with 49 U.S.C. § 12(2). That section authorizes the Commission to compel production of documents "at any designated place of hearing." Brady contends that this section requires subpoenas to be returned only to a hearing and that, since there is no ongoing hearing in this case, the subpoena is unenforceable.

However, the courts have upheld the Commission's authority to issue investigative subpoenas prior to the initiation of a hearing. As early as *Smith v. ICC*, 245 U.S. 33, 38 S.Ct. 30, 62 L.Ed. 135 (1917), the Supreme Court emphasized the investigative as well as the adjudica-

tive role of the agency, and refused to limit the agency's subpoena authority under 49 U.S.C. § 12 to situations where a specific complaint or charge had been filed.

More recently, in *Hunt Foods v. Federal Trade Commission*, 286 F.2d 803 (9th Cir. 1961), the Ninth Circuit specifically rejected the argument that a subpoena by the Federal Trade Commission is unenforceable prior to the issuance of a complaint. The court interpreted Section 9 of the Federal Trade Commission Act, which is substantially identical to Section 12 of the Interstate Commerce Act (49 U.S.C. § 12), as authorizing subpoenas in aid of investigations with respect to matters that might have been made the object of a complaint, *e. g.*, pre-complaint investigations. This decision is in harmony with *United States v. Morton Salt Co.*, 338 U.S. 632, 70 S.Ct. 357, 94 L.Ed. 401 (1950), wherein the Court held that the Federal Trade Commission's authority was not limited to investigating only actual charges, but, like a grand jury's, extended to suspicions of violations.

Mr. Brady nonetheless claims that the subpoena in question is unenforceable because the investigation here does not involve a possible violation of the Act, but relates merely to the fitness of Trans-United to receive operating authority. However, the Commission specifically has been given the authority " . . . to require, by subpoena, the attendance and testimony of witnesses and the production of all books, papers, tariffs, contracts, agreements, and docu-

---

* The subpoena, dated August 8, 1975, states: "You are hereby required to produce and deliver to William Joyner, Special Agent, Bureau of Operations, Interstate Commerce Commission, for examination, inspection and copying records in possession of the City National Bank pertaining to the sale of Trans-United, Inc., of East Chicago, Indiana, by W. T. Brady to Plaza Enterprises and/or Lou Papp, d/b/a Plaza Enterprises, and/or David Hirschfield, Ralph Strutz, and/or Roald Strutz, consisting of, but not neces-

sarily limited to, any escrow account, evidence of any promissory notes or loans where the stock of said Trans-United, Inc. was collateral security for such loan or loans; all correspondence pertaining to the transactions; and all statements, records of deposits, withdrawal records, and other records of any financial transaction during the period January 1, 1972 to the present, in any way relating to the sale of said Trans-United, Inc."

ments relating to *any matter under investigation.*" 49 U.S.C. § 12(1) (emphasis added).

Brady responds that the Commission's subpoena power under this section is limited, by the holding of *Harriman v. ICC,* 211 U.S. 407, 29 S.Ct. 115, 53 L. Ed. 253 (1908), to complaints of violations of the Act or matters that could have been made the object of a complaint, and that, since only a permit application, not a complaint, is involved here, the subpoena is unenforceable. In fact, the *Harriman* decision did not limit the ICC's subpoena power under Section 12 to a matter that is or may be the object of a complaint, although it did limit somewhat the scope of the subpoena power. According to the Ninth Circuit in *Hunt Foods v. FTC, supra,* at p. 809:

"The purpose of the investigation involved in *Harriman* was not limited to a determination of whether the Interstate Commerce Act was being violated in any respect, but was also designed to aid that Commission in recommending additional regulatory legislation. The court held that the subpoena power conferred under section 12 of that act was not broad enough to permit its use in investigations having the latter purpose."

In a similar case involving the Federal Maritime Commission, the Ninth Circuit again discussed the proper scope of an administrative subpoena. *Federal Maritime Commission v. Port of Seattle,* 521 F.2d 431 (1975). There, the agency was seeking to investigate the nature of the respondent's business to determine whether the Commission had jurisdiction over its activities. The court held that the agency's subpoena power extended not only to investigating probable violations of the law, but also to obtaining facts requisite to determining whether the agency had jurisdiction over the matter to be investigated. In so holding, the court emphasized that the role of the district court in an en-

forcement proceeding was simply to determine whether the evidence sought was relevant to any lawful purpose of the agency.

This standard for enforcement was also applied by the Supreme Court in *United States v. Bisceglia,* 420 U.S. 141, 95 S.Ct. 915, 43 L.Ed.2d 88 (1975). While the IRS was given wide latitude in issuing summonses, the decision stated that the courts are to provide protection against mere "fishing expeditions" by ensuring that a summons is issued pursuant to a genuine investigation and is not simply exploratory.

In light of these recent cases, the test for enforcement of the ICC's subpoena is whether it was issued pursuant to a legitimate and specific inquiry. The inquiry in this case concerns the association between W. T. Brady and the present ownership of Trans-United. The subpoena was issued as part of a permit application investigation into the "fitness" of Trans-United to receive additional operating authority. In 1970, Trans-United applied for and was granted carrier authority. Between 1972 and 1974, Trans-United applied for additional authority, which applications are still pending. In 1974, an administrative law judge found that the 1970 authority had been procured through fraud and misrepresentation, and revoked that authority. Brady was found to have been involved in the fraud. In 1972, Brady purportedly sold his shares in Trans-United. The present putative owners of Trans-United, whose permit applications are at issue, claim that they are not associated with the past management of Trans-United. It is exactly this issue that prompted the subpoena.

Inasmuch as the ICC's inquiry into the past and present ownership of Trans-United is clearly relevant to the issue of Trans-United's fitness as a carrier, and the subpoena is focused on this issue, the subpoena will be enforced.