**INTERSTATE COMMERCE COMMISSION,**
Plaintiff-Appellant,

v.

**PIGGY BACK SHIPPERS ASSOCIATION OF FLORIDA, INC.,**
Defendant-Appellee.

No. 82–5213.

United States Court of Appeals,
Eleventh Circuit.

May 2, 1983.

Edward W. Arnn, J. Preston Proffitt, Jr., Regional Counsel, I.C.C., Atlanta, Ga., for plaintiff-appellant.

Grove, Jaskiewicz, Gilliam & Cobert, Ronald N. Cobert, Robert L. Cope, Washington, D.C., Stephen T. Onuska, Miami, Fla., for defendant-appellee.

Before HILL and HATCHETT, Circuit Judges, and HAYNSWORTH *, Senior Circuit Judge.

PER CURIAM:

The Interstate Commerce Commission (ICC) filed a complaint for an injunction against Piggy Back Shippers Association of Florida, Inc. (Piggy Back), seeking enforcement of the ICC's administrative subpoena duces tecum for the production of Piggy Back's records. We have jurisdiction under 49 U.S.C.A. §§ 10321, 10561, and 11702(a)(6) and rules relating to suits in equity existing under the Constitution and laws of the United States. After discovery activities were completed, both parties moved for summary judgment. The district court granted Piggy Back's motion for summary judgment and entered judgment dismissing the ICC's complaint. We affirm.

The facts are not in dispute. Piggy Back is exempt under 49 U.S.C.A. § 10562(3) which provides exemption from regulation for bona fide shippers associations.[1] Shippers organizations are organized for the benefit of its members and seek to obtain the best freight rates for its members. The association is allowed to operate unlicensed and unregulated so long as it does not hold itself out to the public as a freight forwarder and performs services only for its dues paying members on a nonprofit basis. On the other hand, freight forwarders serve the public for profit and specialize in giving fast freight forwarding service to the public in less than carload capacity, and offer pickup and delivery services. Because Piggy Back is exempt from ICC regulation, it contends that its books and records are outside the scope of ICC subpoena power in the absence of notice of commencement of an investigation. The ICC contends that it has the right to determine whether Piggy Back is a bona fide shipper association rather than a freight forwarder, and in doing so may use its subpoena power.

We must determine whether the ICC has authority to use its administrative subpoena powers to determine whether entities which claim to be bona fide shippers associations in fact qualify for such status under applicable statutes.

Title 49 U.S.C.A. § 10321(c)(1) provides:

The Commission, an individual Commissioner, an employee board, and an employee delegated to act under Section

---

* Honorable Clement F. Haynsworth Jr., U.S. Circuit Judge for the Fourth Circuit, sitting by designation.

1. 49 U.S.C.A. § 10562 provides in pertinent part:

§ 10562. Exempt freight forwarder service

The Interstate Commerce Commission does not have jurisdiction under this subchapter over—

(3) the service of a shipper or a group of shippers in consolidating or distributing freight on a nonprofit basis, for the shipper or members of the group to secure carload, truckload, or other volume rates; ....

10305 of this title may subpoena witnesses and records *related to a proceeding of the commission* from any place in the United States, to the designated place of the proceeding. [Emphasis added.]

"Proceeding" is defined in 49 C.F.R. 1100.-5(b) (1980) as follows:

The term "proceeding" shall include: (1) An "informal complaint" filed under Rule 22 or 23 or a "formal complaint" alleging violation of any provision of the act or of any regulation or requirement made pursuant to a power granted by such act, including petitions on the special docket; (2) an "application" for (i) the granting of any right, privilege, authority, or relief under or from any provision of the act or of any regulation or requirement made pursuant to a power granted by such act, or (ii) the consideration of any submission required by law to be made to the Commission; (3) an "investigation" instituted by the Commission; (4) a "rulemaking" proposal instituted by the Commission.

By statute, 49 U.S.C.A. § 11144, the ICC has broad investigatory powers, which allow ICC employees to inspect records and facilities of regulated entities.[2] Because this visitorial power applies only to regulated entities, and because Piggy Back is exempt from regulation as a shippers association, ICC seeks enforcement of its administrative subpoena in this case.

■ As a general proposition, if information is relevant to a proper investigation, the information must be furnished although the entity is not a party to the investigation and not subject to ICC regulation. *Ellis v. Interstate Commerce Commission,* 237 U.S. 434, 35 S.Ct. 645, 59 L.Ed. 1036 (1915); *Comet Electronics, Inc. v. United States,* 381 F.Supp. 1233 (W.D.Mo.1974), *aff'd* 420 U.S. 999, 95 S.Ct. 1439, 43 L.Ed.2d 758 (1975). We agree with the trial court that under the definition of a "proceeding" as defined in 49 C.F.R. 1100.5(b) (1980), only one of the four enumerated options is relevant to this case: (3) "an investigation instituted by the Commission."

■ Section 1100.41 of 49 C.F.R. provides, in pertinent part: "An order instituting an investigation will be served by the Commission upon the respondents ...." The trial court found that no such order instituting an investigation had been served on Piggy Back. Therefore, the trial court concluded that the ICC had failed to follow its own regulations, and since Piggy Back is a shipper's association, and exempt from regulation, the agency is held to strict com-

---

**2.** 49 U.S.C.A. § 11144 provides:

§ 11144. Records: form; inspection; preservation

(a) The Interstate Commerce Commission may prescribe the form of records required to be prepared or compiled under this subchapter—

(1) by carriers, brokers, and lessors, including records related to movement of traffic and receipts and expenditures of money; and

(2) by persons furnishing cars or protective service against heat or cold to or for a rail or express carrier providing transportation subject to the jurisdiction of the Commission under subchapter I of chapter 105 of this title to the extent related to those cars or that service.

(b) The Commission, or an employee designated by the Commission, may on demand and display of proper credentials—

(1) inspect and examine the lands, buildings, and equipment of a carrier, broker, or lessor; and

(2) inspect and copy any record of—

(A) a carrier, broker, lessor, or association;

(B) a person controlling, controlled by, or under common control with a carrier if the Commission considers inspection relevant to that person's relation to, or transaction with, the carrier; and

(C) a person furnishing cars or protective service against heat or cold to or for a rail or express carrier if the Commission prescribed the form of that record.

(c) The Commission, or an employee designated by the Commission, may, during normal business hours, inspect and copy any record related to motor vehicle transportation of a cooperative association or federation of cooperative associations required to notify the Commission under section 10526(a)(5) of this title. However, the Commission may not prescribe the form of records to be maintained by a cooperative association or federation of cooperative associations.

(d) The Commission may prescribe the time period during which operating, accounting, and financial records must be preserved by carriers, brokers, lessors, and persons furnishing cars or protective services.

pliance with its rules and general practice. The ICC alleges error by the trial court contending that the service of an order mandated by 49 C.F.R. 1100.41 (1980) applies only to formal investigations. It contends that the statutory authority to subpoena (49 U.S.C.A. 10321(c)(1)) authorizes subpoenas in both formal and informal investigations. According to the ICC, the subpoena issued here is for an informal investigation to determine the true status of Piggy Back and does not require the notice mandated for a formal proceeding.

The district court found that the visitorial investigatory power of the ICC under 49 U.S.C.A. § 11144 may only be used to review the books and records of a regulated entity which is required to keep certain books and records. The district court then considered the express language of the statute which requires that a subpoena be "related to a proceeding of the Commission" and the general rules of the Commission. It then concluded that no actual proceeding had been instituted against Piggy Back; therefore, the Commission could not use its administrative subpoena to obtain Piggy Back's books and records. We find no authority, and the ICC points us to no authority, which authorizes the ICC to subpoena books and records of unregulated shippers associations in the absence of the commencement of a proceeding.

Accordingly, we affirm the decision of the district court.

AFFIRMED.

HAYNSWORTH, Senior Circuit Judge, dissenting:

The word "proceeding" as used in 49 U.S.C.A. § 10321(c)(1) should not be construed by reference to the Commission's definition of a "proceeding" in its Rules of General Practice. 49 C.F.R. § 1100.5(b) (1980). The word, as used in the statute, is one of art, clearly defined in the reviser's note and by the Congress itself to include the kind of informal investigation during which earlier statutes authorized the Commission's exercise of its subpoena power.

Prior to the revised Interstate Commerce Act of October 13, 1978, the Commission's subpoena power was derived primarily from 49 U.S.C.A. § 12(1), which, in its last clause, authorized the Commission to "require, by subpoena, the attendance and testimony of witnesses and the production of all books, papers, tariffs, contracts, agreements, and documents relating to any matter under investigation." The revised Interstate Commerce Act of 1978, however, was a combination and rearrangement of many different sections relating to different classes of businesses within the regulatory jurisdiction of the Commission. In the reviser's note, the intention was clearly expressed. Instead of the words "books, papers, tariffs, contracts, agreements, and documents," the reviser substituted the word "records" as encompassing all of those things previously enumerated. They had found the words "proceeding," "matter" and "investigation," as previously used in the statutes, redundant; and they substituted the single word "proceeding" with the intention that it be construed as encompassing the other two words. More importantly, the Congress itself expressed its legislative purpose and prescribed the construction required of its revision. It stated in § 3(a) of the Act:

"Sections 1 and 2 of this Act restate, without substantive change, laws enacted before May 16, 1978, that were replaced by those sections. Those sections may not be construed as making a substantive change in the laws replaced. Laws enacted after May 15, 1978, that are inconsistent with this Act are considered as superseding it to the extent of the inconsistency."

92 Stat. 1466, 1 U.S.Code Congressional and Administrative News, 95th Cong., 2d Session, 1978, 1466.

Among the provisions for enforcement of the act and the commencement of formal proceedings for that purpose, § 11701(a) authorizes the Commission to initiate an investigation on its own initiative or on complaint. Section 10321, however, is one of the general administrative provisions of the statute that is not exclusively concerned

with formal enforcement procedures. A section prescribing how a formal proceeding may be commenced should not be held to limit administrative powers of the Commission that are conferred by a separate section relating specifically to those administrative powers.

In the administration of the act, informal procedures have great utility when hard evidence of a violation of the act is lacking. Piggy Back professes to be an exempt shippers' association. But it is not exempt if, in part, it has been conducting the business of a freight forwarder. The Commission simply seeks information which will enable it to answer the question whether Piggy Back is, in part, a freight forwarder or an exempt non-profit association serving exclusively its own members. The answer will determine whether or not the Commission has jurisdiction to regulate and enforce, and, of course, the Commission has jurisdiction to inquire into its own jurisdiction.

That kind of inquiry preferably should be informal. So far as appears on this record, the Commission presently has no hard information that would warrant the filing of a formal complaint charging Piggy Back with any violation of the law. An inquiry to determine jurisdiction should not be required to proceed in the straitjacket of formal complaint and investigatory proceedings containing an explicit or implicit charge of a violation of the law.

The course of judicial decision would support this view. In holding that the Commission may issue an investigative subpoena before the initiation of any formal proceeding, the court in *United States v. City National Bank,* 403 F.Supp. 345 (C.D.Cal. 1975), put it well:

As early as *Smith v. ICC,* 245 U.S. 33, 38 S.Ct. 30, 62 L.Ed. 135 (1917), the Supreme Court emphasized the investigative as well as the adjudicative role of the agency, and refused to limit the agency's subpoena authority under 49 U.S.C. § 12 to situations where a specific complaint or charge had been filed.

More recently in *Hunt Foods v. Federal Trade Commission,* 286 F.2d 803 (9th Cir. 1961), the Ninth Circuit specifically rejected the argument that a subpoena by the Federal Trade Commission is unenforceable prior to the issuance of a complaint. The court interpreted Section 9 of the Federal Trade Commission Act, which is substantially identical to Section 12 of the Interstate Commerce Act (49 U.S.C. § 12), as authorizing subpoenas in aid of investigations with respect to matters that might have been made the object of a complaint, *e.g.,* pre-complaint investigations. This decision is in harmony with *United States v. Morton Salt Co.,* 338 U.S. 632, 70 S.Ct. 357, 94 L.Ed. 401 (1950), wherein the Court held that the Federal Trade Commission's authority was not limited to investigating only actual charges, but, like a grand jury's, extended to violations.

In *ICC v. James R. Gould,* 629 F.2d 847 (3d Cir.1980), *cert. denied,* 449 U.S. 1077, 101 S.Ct. 856, 66 L.Ed.2d 800 (1981), the Third Circuit noted that § 10321 extends the Commission's investigative power to anyone who has information relevant to a transportation-related inquiry.[1] The question before the court in *Gould* was whether the Commission has statutory jurisdiction under § 11144(b) to determine its own jurisdiction. Gould, who claimed his business was exempt from Commission regulation, argued that the § 11144(b) inspection power applies only where a business has consented to Commission regulation or has been adjudicated to be subject to Commission jurisdiction, and that the Commission might investigate to determine its jurisdiction only "by resorting to the more cumbersome procedures of ICA §§ 204, 205, 49 U.S.C.A. § 10321 (West Supp.1980)." *Id.* at 850.

The court disagreed, holding that the § 11144(b) inspection power and the § 10321 general investigatory power are equally available alternatives where the person or entity the Commission seeks to

---

**1.** *See also Comet Electronics, Inc. v. United States,* 381 F.Supp. 1233, 1237–40 (W.D.Mo. 1974), *aff'd mem.,* 420 U.S. 999, 95 S.Ct. 1439, 43 L.Ed.2d 758 (1975).

inspect arguably falls within Commission jurisdiction. The court apparently deemed the § 10321 procedure "more cumbersome" because the section contains no provision for summary enforcement and only certain Commission officials may authorize the issuance of subpoenas. *Id.* at 850 n. 7. In light of the court's conclusion that the Commission may use the summary procedures of § 11144(b) to determine its jurisdiction, it would appear to follow *a fortiori* that the Commission may seek to determine its jurisdiction by means of a subpoena issued pursuant to § 10321, which provides greater procedural safeguards for the individual or company that is the focus of the Commission's attention.

"When I use a word," Humpty-Dumpty said, "it means just what I choose it to mean—neither more nor less."[2] Congress has expressed the intention with which it used the word "proceeding" in § 10321(c)(1), and that expression should govern our decision.

I respectfully dissent.

**2.** Lewis Carroll, *Alice's Adventures in Wonder-* *land,* Chap. 6.