827 F.2d 699
 SEABOARD SYSTEM RAILROAD, Plaintiff-Counter-defendant-Appellee,
v.
INTERSTATE COMMERCE COMMISSION, United States of America,
Defendants-Counter-claim-Appellants.
 No. 86-3449.
 United States Court of Appeals,
Eleventh Circuit.
 Sept. 15, 1987.
 
 Barbara J. Welsch, Chicago, Ill., for I.C.C.
 Mary T. Koehmstedt, Leonard Schaitman, Dept. of Justice/Civ. Div., Washington, D.C., for I.C.C. & U.S.
 James F. Moseley, Taylor, Moseley & Joyner, Jacksonville, Fla., Fred R. Birkholz, Baltimore, Md., for Seaboard System R.R.
 Appeal from the United States District Court for the Middle District of Florida.
 Before FAY and CLARK, Circuit Judges, and HENDERSON, Senior Circuit Judge.
 CLARK, Circuit Judge:
 
 
 1
 The Interstate Commerce Commission (ICC) appeals from the district court's order enjoining it from obtaining records requested from Seaboard System Railroad, Inc. (Seaboard). Finding that the district court erroneously interpreted the scope of the ICC's summary inspection power under 49 U.S.C. Sec. 11144 (1982),[1] we reverse the decision below.
 
 
 2
 The facts of this case are not complex. In October, 1985, the ICC began investigating the reciprocal switching practices of Seaboard and two other railroads to determine whether they were complying with the prohibitions against discriminatory and unreasonable practices found in the Interstate Commerce Act (the Act). See 49 U.S.C. Secs. 11903, 10701. Reciprocal switching is an arrangement between two railroads that own different segments of the track to switch cars for each other, usually without an additional charge to the shipper. The ICC is authorized to investigate reciprocal switching practices to ensure that railroads do not discriminate against shippers, thereby forcing some to incur higher costs. Id. Sec. 11903. The ICC may also require railroads to enter reciprocal switching agreements when it would be practicable and serve the public interest. Id. Sec. 11103.
 
 
 3
 ICC Special Agent Horner went to Seaboard's district sales office and requested the railroad's sales solicitation and switching files relating to reciprocal switching at the Eli Lilly plant in Lafayette, Indiana. Seaboard refused. Agent Horner then sent a letter to Seaboard at its headquarters in Jacksonville, Florida requesting again the information, invoking the ICC's summary inspection authority under Sec. 11144(b), and warning that refusal to comply would result in an assessed penalty of $5,000 for each violation and $5,000 each day the violation continues, pursuant to Sec. 11901(a). Seaboard again refused to release the requested records. Agent Horner then returned to Seaboard's office and proffered a second demand letter, which was also refused.
 
 
 4
 Seaboard commenced this action, seeking a declaratory injunction that the ICC may not inspect and copy the requested records pursuant to Sec. 11144(b), and an injunction prohibiting the ICC from taking any further action to enforce its demand or to seek penalties for noncompliance. The ICC counterclaimed for civil penalties and moved for a preliminary injunction to require Seaboard to turn over the requested record.
 
 
 5
 The district court found in favor of Seaboard. The district court interpreted Sec. 11144(b) to authorize inspection of only those records required to be kept by the ICC, or explanatory of such documents, on the basis of Burlington Northern, Inc. v. ICC, 462 F.2d 280 (D.C.Cir.), cert. denied, 409 U.S. 891, 93 S.Ct. 120, 34 L.Ed.2d 148 (1972), and Southern Railway Co. v. I.C.C., 553 F.2d 1345 (D.C.Cir.1977). The district court concluded that the ICC's demand was "overbroad" because the records requested from Seaboard were not "required to be kept by the ICC or explanatory of such documents." The district court denied the ICC's request for a preliminary injunction and enjoined the ICC from demanding the records or imposing penalties against Seaboard. Final judgment was entered in favor of Seaboard and the ICC seeks reversal of the decision below.
 
 
 6
 The ICC contends that the district court's interpretation contradicts the plain meaning of the statute, fails to accord proper deference to the agency's consistent interpretation, and is contrary to the decisions of other circuits that have adopted a four-part test of reasonableness to evaluate inspection requests. As a result of the district court's decision, the ICC suggests that carriers are now permitted to define the limits of the ICC's summary inspection authority under Sec. 11144(b).
 
 
 7
 The clear language of the statute, supported by its legislative history, and the decisions of other circuits confronted with this issue, persuade us that the ICC's summary inspection authority is not limited to records that the ICC requires carriers to keep. We address first whether the ICC's request should be evaluated under a standard of reasonableness, or by reference to what documents are required to be kept. If not so limited, we consider whether the ICC's request is valid under the proper standard.
 
 
 8
 The starting point in statutory interpretation is, of course, the statute. If the statute is clear on its face, we need not examine additional sources of guidance. Board of Governors of Federal Reserve System v. Dimension Financial Corp., 474 U.S. 361, 106 S.Ct. 681, 686, 88 L.Ed.2d 691 (1986). The controlling statutory provision, 49 U.S.C. Sec. 11144(b), authorizes the ICC to "inspect and copy any record of ... a carrier...." The language is unambiguous and contains no words of limitation that would curtail the ICC's inspection authority, such as limiting inspection authority to records that carriers are required to keep. See United States v. Southern Pacific Transportation Co., 691 F.2d 883, 884 (9th Cir.1982). The ICC argues persuasively that had Congress intended to limit the statute in such manner, it could have incorporated a reference to Sec. 11144(a), which permits the ICC to "prescribe the form of records required to be prepared under this subchapter." Further, it makes little practical or logical sense to require the ICC to prescribe forms for all records it might wish to inspect, many of which would originate from parties with whom the railroads do business.
 
 
 9
 This conclusion comparts with the decisions of other courts of appeals that have addressed the issue, and concluded that the ICC's power is limited only by reasonableness. In I.C.C. v. Gould, 629 F.2d 847 (3d Cir.1980), cert. denied, 449 U.S. 1077, 101 S.Ct. 856, 66 L.Ed.2d 800 (1981), the ICC sought to gain access to the business records of a broker of transportation services in order to investigate its compliance with the Act. Gould refused to cooperate and the ICC obtained an injunction. After determining that the ICC had jurisdiction to determine whether Gould was subject to its jurisdiction, the court addressed the scope of the ICC's inspection authority under Sec. 11144(b). The court stated that the ICC's authority to inspect documents under the statute is limited only by "the same standards of 'reasonableness' as apply to other agencies' subpoena power." Id. at 854 (citations omitted). The court held that
 
 
 10
 in order to obtain an injunction under section 11702(a)(4) to enforce a section 11144(b) inspection request, the ICC, in addition to meeting the procedural requirements of section 11144(b), must also satisfy the tests of [United States v.] Powell, [379 U.S. 48, 85 S.Ct. 248, 13 L.Ed. 112 (1964) ], [United States v.] LaSalle [National Bank, 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978) ], and [United States v.] Garden State [National Bank, 607 F.2d 61 (3d Cir.1979) ].
 
 
 11
 Id. at 855-56 (footnote omitted). In Powell, the Supreme Court established a four-prong test of reasonableness to determine whether the commissioner of the IRS could seek judicial enforcement of an administrative summons. 379 U.S. at 57-58, 85 S.Ct. at 255. The four prongs of the Powell test are (1) that the investigation is being conducted for a legitimate purpose; (2) that the material sought is relevant to the legitimate purpose of the investigation; (3) that the information is not yet in the possession of the agency; and (4) that the proper administrative steps have been followed. Id. Although the reasonableness test was set forth in the context of the Internal Revenue Service's summons power, it is equally relevant to determine the limit of the ICC's summary inspection power. See, e.g., Gould, 629 F.2d at 855-56; Southern Pacific, 691 F.2d at 885. The Gould court rejected the argument that the ICC's inspection request for " 'transportation-related records maintained by Gould in the course of his interstate transportation operations' " was too indefinite. 629 F.2d at 857 (citation omitted). The court held that "[s]uch a request is sufficiently specific to support enforcement under section 11144(b)." Id.
 
 
 12
 In Southern Pacific, 691 F.2d 883, the ICC sought access to a carrier's "Check List"--a document compiled from railroad records containing information required to be kept by the ICC. Southern argued that the ICC's right of inspection is limited under the Act to specific records, and that the Check List is an internal management report used to determine compliance by personnel with internal procedures and the Act. Id. at 884. The court observed that although the statute contains no restrictive language, courts have limited its scope by imposing a standard of "reasonableness." Id. Adopting the Powell test as applied in Gould, the court determined that the ICC's request for documents was motivated by a valid investigative purpose and fell within the parameters of Powell. Id. at 885.
 
 
 13
 Seaboard supports its contention that the ICC's inspection powers are limited to those records required to be maintained or related to such documents by reference to two D.C. Circuit cases. In Burlington, 462 F.2d 280, the ICC requested review of Burlington's business forecasts, pursuant to its authority to inspect memoranda, correspondence and other documents belonging to railroads. Id. at 285. Burlington refused to comply, contending that the projections and internal forecasts were not subject to inspection "because they do not relate to or explain historical or current records over which the Commission has regulatory power." Id. The court agreed with Burlington that the ICC's "powers of inspection are focused upon facts and historical data as reflected in the record; they do not extend to projections or predictions of future events which have no apparent relevance to the understanding or evaluation of accounting and bookkeeping entries." Id. at 288. The court denied the request, reasoning that "[t]he budget and income forecast demanded by the Commission relate to events which might or might not occur in the future, as distinguished from facts in past events recorded in the books and records of the carriers." Id.
 
 
 14
 Seaboard's reliance on Burlington fails to persuade us for two reasons. First, we find little support for the Burlington court's restrictive interpretation of the statute as directed only towards the maintenance of a uniform accounting system and the review of relevant records required to be kept.[2] We do not believe that the statute should be construed so narrowly, particularly in light of its amendment in 1920 and in 1940. In 1920, Congress amended the Act to read:
 
 
 15
 The commission shall at all times have access to all accounts, records, and memoranda, including all documents, papers, and correspondence now or hereafter existing, and kept or required to be kept by carriers subject to this Act....
 
 
 16
 41 Stat. 493 (1920) (emphasis added). The amendment was intended to overrule the Supreme Court's decision in United States v. Louisville & Nashville Railroad Co., 236 U.S. 318, 35 S.Ct. 363, 59 L.Ed. 598 (1915) (L & N), that the ICC's investigative authority did not extend to review of correspondence. H.R.Rep. No. 456, 66 Cong., 1st Sess. 30 (1919).[3] In L & N, the Supreme Court had stated that the statute's "primary object to be accomplished was to establish a uniform system of accounting and bookkeeping, and to have an inspection thereof." 236 U.S. at 335-36, 35 S.Ct. at 369. In 1940, the statute was again amended, in a more sweeping manner, to read:
 
 
 17
 The Commission or any duly authorized special agent, accountant, or examiner thereof shall at all times have authority to inspect and copy any and all accounts, books, records, memoranda, correspondence, and other documents, of such carriers and lessors, and such accounts, books, records, memoranda, correspondence, and other documents, of any person controlling, controlled by, or under common control with any such carrier, as the Commission deems relevant to such person's relation to or transactions with such carrier.
 
 
 18
 54 Stat. 917 (1940). The Burlington court reasoned that this amendment also did not change the limited scope of the statute as interpreted by the Supreme Court in L & N. 462 F.2d at 287.
 
 
 19
 We find it clear that Congress rejected the Supreme Court's restrictive interpretation of the statute set forth in L & N in 1919. The 1920 extension of the ICC's right of access to include "all documents, papers, and correspondence now or hereafter existing" signifies that the decision was certainly overruled with respect to correspondence. More important for our purposes, the clarification that requested information could be either "kept or required to be kept by carriers subject to this Act" clearly negates the Burlington court's conclusion that the request must relate to the carrier's accounting and bookkeeping system. Indeed, the opinion of the four judges who rejected the panel's interpretation and voted for reconsideration en banc,[4] stated that "the 1920 wording makes clear that Sec. 20 governs documents that are 'kept' whether or not 'required to be kept.' " 462 F.2d at 289. Further doubt is shed on the Burlington court's interpretation of L & N because it ignores important language in the decision that reserved the question of whether the statute authorized the inspection of accounts, records, and memoranda for which no form had been prescribed by the ICC. See L & N, 236 U.S. at 335, 35 S.Ct. at 369. Both this reservation and the 1920 amendment do not permit us to agree with the Burlington court's conclusion that the ICC's access to material is confined to information relating to or explanatory of required accounting and bookkeeping entries.
 
 
 20
 Second, Burlington is inapposite. Seaboard fails to appreciate the difference between a request for financial forecasts and a request for information relating to possible violations of the Act. The latter is clearly within the scope of the regulatory aspects of the Act, but the former is not necessarily.[5] Moreover, the Burlington court repeatedly distinguished between seeking legitimate access to facts and historical data reflected in records, and impermissible access to predictions of future events. 462 F.2d at 288. The Burlington decision, irrespective of the correctness of its conclusion, must be limited to its unique factual context. Thus, the case offers no insight into the question of whether the ICC may obtain information relating to Seaboard's switching practices.
 
 
 21
 Seaboard also contends that Southern Railway Co. v. I.C.C., 553 F.2d 1345 (D.C.Cir.1977), supports its position. In Southern Railway, the ICC sought to examine all of Southern's solicitation files in its Philadelphia office. Southern acknowledged that the ICC has the "right to inspect any documents for which it has a legitimate need for regulatory purposes," id. at 1346-47, but contended that the ICC must request specifically those documents that it desires and that are required to be kept. Southern insisted that it should prevail under Burlington, but the court declined to rule in favor of Southern on that basis. The court remanded the case to permit the ICC "to demonstrate the need for information relating to or explanatory of required accounting and bookkeeping entries and otherwise conformably to our holding in Burlington Northern, supra." Id. at 1350. The court refused to permit Southern to prevail simply because the ICC had sought access to the carrier's files without specifying its investigative purpose or without making its demand reasonably definite. Although the Southern Railway court followed precedent in adopting the Burlington language insisting that the requested materials be related to the required accounting and bookkeeping system, we reject this reliance for the reasons stated above. We find instructive the dissent's position in Southern Railway that, were the panel free to disregard Burlington, it should require that the ICC request be " 'reasonably relevant to a proper investigative purpose.' " 553 F.2d at 1351 (citing CAB v. United Airlines, 542 F.2d 394, 402 (7th Cir.1976)). Furthermore, the ICC's request in this case is easily distinguishable from the more general request it made for all of Southern's solicitation files contained in its Philadelphia office. Here, the ICC seeks access to Seaboard's sales solicitation and switching files pertaining to one particular plant of the Eli Lilly Company.
 
 
 22
 Seaboard also refers us to a decision by this circuit, I.C.C. v. Piggy Back Shippers Assoc. of Florida, Inc., 704 F.2d 533 (11th Cir.1983), which again has no bearing on this case. In that case, the ICC sought an injunction to obtain information from Piggy Back under its administrative subpoena powers pursuant to 49 U.S.C. Sec. 10321(c)(1). The ICC did not seek the materials under its summary inspection power pursuant to Sec. 11144(b), although the district court expressed the opinion that Sec. 11144 "may only be used to review the books and records of a regulated entity which is required to keep certain books and records." 704 F.2d at 536. However, this court held only that the ICC had no authority "to subpoena the books and records of unregulated shippers associations in the absence of the commencement of a proceeding," id., and did not discuss the scope of Sec. 11144. The narrow issue of whether the ICC could proceed against a nonregistered entity in the absence of a properly commenced civil court proceeding has no application to the instant case.
 
 
 23
 We believe that a request by the ICC to examine a carrier's records should be evaluated by its reasonableness. Specifically, the court should determine whether the investigation is being conducted for a legitimate purpose, whether the information sought is relevant to the legitimate purpose of the investigation, whether the information is not in the possession of the ICC, and whether the proper administrative procedures have been followed. See Powell, 379 U.S. at 57-58, 85 S.Ct. at 255.
 
 
 24
 Having established the proper legal standard that the district court should follow, we consider whether the ICC's request is within the scope of its statutory investigative authority. In this case, the record is complete and remand on this issue would serve no useful purpose. We find the ICC's request consistent with the four factors outlined above. First, the request was made for the legitimate purpose of investigating whether Seaboard had engaged in discriminatory or unreasonable practices under Sec. 11903 or Sec. 10701, or whether the ICC should direct the carrier to enter into a reciprocal switching agreement under Sec. 11903. Second, the ICC has shown at the final hearing that the requested information is relevant to the investigation. Third, it is undisputed that the ICC does not have the documents in its possession. Finally, it is also undisputed that Agent Horner followed the proper procedures on all occasions. In addition, we note that the request identifies with specificity the information that the ICC seeks, namely the sales solicitation and switching files pertaining to the Eli Lilly Plant in Lafayette. In fact, review of the final hearing transcript reveals that the requested information most likely consists of only one file. Record, Vol. III at 12. We observe that this request is far more defined than the one upheld by the Third Circuit in Gould, 629 F.2d 847 (requesting inspection of transportation-related records).
 
 
 25
 We conclude that the propriety of a request by the ICC for information under Sec. 11144(b) is determined by its reasonableness. We reverse the district court's decision that 49 U.S.C. Sec. 11144(b) authorizes inspection only of records required to be kept by the ICC or of information explanatory of such documents. We remand this case with instructions to permanently enjoin Seaboard from refusing to provide the ICC with all sales or freight solicitation and switching files regarding the Eli Lilly plant at Lafayette, Indiana. We also request the district court to consider whether Seaboard is liable for civil penalties under the Act.
 
 
 26
 REVERSED and REMANDED.
 
 
 
 [1]
 Section 11144 states in pertinent part:
 Sec. 11144. Records: form; inspection; preservation
 (a) The Interstate Commerce Commission may prescribe the form of records required to be prepared or compiled under this subchapter--
 (1) by carriers, brokers, and lessors, including records related to movement of traffic and receipts and expenditures of money; and
 (2) by persons furnishing cars or protective service against heat or cold to or for a rail or express carrier providing transportation subject to the jurisdiction of the Commission under subchapter I of chapter 105 of this title to the extent related to those cars or that service.
 (b) The Commission, or an employee designated by the Commission, may on demand and display of proper credentials--
 (1) inspect and examine the lands, buildings, and equipment of a carrier, broker, or lessor; and
 (2) inspect and copy any record of--
 (A) a carrier, broker, lessor, or association;
 (B) a person controlling, controlled by, or under common control with a carrier if the Commission considers inspection relevant to that person's relation to, or transaction with, that carrier; and
 (C) a person furnishing cars or protective service against heat or cold to or for a rail or express carrier if the Commission prescribed the form of that record.
 (emphasis added). The Interstate Commerce Act (the Act) is now codified at 49 U.S.C. Sec. 10101 et seq.
 
 
 [2]
 We note that four members of the D.C. Circuit voted for en banc reconsideration of the case. See 462 F.2d at 288. One judge did not participate and the four-four tie resulted in denial of the request
 
 
 [3]
 Seaboard contends that the House Report on the amendment supports its position that the ICC's inspection powers are restricted to documents required to be kept by the carriers. See H.R.Rep. No. 456, 66th Cong., 1st Sess. 30 (1919). However, the cited passage pertains to the "keeping of accounts and the prohibition against destroying or mutilating them, all documents, papers, and correspondence required to be kept by the carriers." Id
 
 
 [4]
 See supra note 2
 
 
 [5]
 The issue of whether the ICC may review certain financial projections is not before this court, and we reserve resolution of it until such time